43645.    COCHRAN et al. v. BANK OF HANCOCK
COUNTY et al.

Argued May 6, 1968—Decided June 27, 1958.

Eva L. Sloan, Joseph B. Duke, for appellants.

G. L. Dickens, Jr., G. L. Dickens, Sr., Lewis, Rozier & Hitch-cock, Lloyd Lewis, for appellees.

FELTON, Chief Judge. ■ *The interest items.* We agree with the trial court that the bank was entitled to collect interest on the principal of the note from July 6, 1965, until it was paid. This did not occur until the payment of the sale price of the property on March 1, 1967. "On the sale of land, in the absence of express agreement, the payment of the purchase money and the delivery of the title deed are concurrent acts. 1 Sugd. Vend. [239], [241]; Lennett v. Sheehan, 27 Minn. 328. But if the sale fails of consummation, the vendee, in order to recover in an action for breach of the contract, must allege and prove an offer of performance on his part by a tender of the purchase money, unless that tender was waived." *Emery v. Atlanta Real Estate Exchange,* 88 Ga. 321, 327 (14 SE 556). The terms of the sale as advertised were for *cash,* and the sale under the power in the deed was not completed until payment was made. There had been no lawful tender until that time. Consequently, nothing took place until March 1, 1967, to satisfy the note or to stop the running of the interest, which is the compensation fixed by the parties to be paid for the use of the money, or the withholding of the debt. *Harris v. Allen,* 18 Ga. 177. The principal and interest constitute one debt, each being a part of the contractual obligation. *Park v. Buxton,* 10 Ga. App. 356 (2) (73 SE 557).

Mr. Cochran's contention that he is entitled to interest on the excess funds from the sale date, December 6, 1966, is not meritorious. The funds were not paid over to the bank on that

date, or at any time until March 1. Until such time as the bank received payment it was under no obligation to pay any amount to Cochran or to anybody else, and consequently could not be liable for the payment of interest thereon. However, when the funds were paid to it on March 1, the bank immediately became liable to whoever was entitled to the excess funds, and, failing to make payment, was liable for interest thereon at the lawful rate of 7%. *Code* §§ 57-110, 57-101. *Hobbs v. Citizens Bank of Wrens,* 32 Ga. App. 522 (7) (124 SE 72).

However, where payment of the funds to the rightful owner is prohibited by a court order or by a garnishment proceeding, interest does not accrue until the order or garnishment has been dissolved. The garnishment served on the bank by Mr. Phillips prior to any notice or recording of the conveyance of her interest in the land by Mrs. Shelnutt to Mr. Cochran was sufficient cause for withholding payment of the excess funds until his counsel stipulated in open court that Phillips claimed no right to or interest in the fund by reason of the garnishment or otherwise. It does not appear that this occurred until the opening of the trial of the case on June 15, 1967, from which time interest began to accrue on the surplus held by the bank.

■ *Notice for attorney's fees.* Since the maker of the note was dead the notice to his personal representatives was sufficient to comply with the notice requirement insofar as parties are concerned. *Harris v. Powers,* 129 Ga. 74 (8) (58 SE 1038, 12 AC 475)); *Story v. Wolff,* 21 Ga. App. 727 (2) (94 SE 899).

■ *The attorney's fees.* We think that the trial court's judgment as to attorney's fees in favor of the bank is erroneous. *Code Ann.* § 20-506 (and sources cited) contains the requirements necessary to form the basis for a claim to attorney's fees, etc. Paragraph (d) provides: "Obligations to pay attorney's fees contained in security deeds and bills of sale to secure debt shall be subject to provisions of this section where applicable." This Annotated Code section unofficially codifies the new Acts which materially added to the old law. Under the old law attorney's fees could not be recovered except by a judgment. Paragraph (d) of the new law added the much needed provision to provide for the collection of attorney's fees in cases where

sales were made under powers of sale in instruments named. The very obvious purpose of the original law was to give the debtor (by the notice) opportunity to avoid the rendition of a verdict and judgment for the debt plus attorney's fees. Under the old law a notice could not be effective *after* a judgment for fees had been rendered because the opportunity to avoid the judgment was not given. The new law, though not as specific as it might be, means that a liability for attorney's fees may be established where property is sold under powers of sale, without the necessity of obtaining a judgment for the fees. The obligation to pay the fees in such a case is established by the creditor by the giving of the notice ten days before the property is auctioned before the courthouse door so as to give the debtor opportunity to avoid the payment of the fees by paying the debt before the act takes place (the auction) which gives finality to the obligation to pay the fees. In the event of an action on the obligation, the judgment is the thing that gives the finality. In the case of a sale under power it is the auction (after notice) that gives finality to the obligation to pay the fees provided the sale is completed by the execution of a deed to the purchaser at the sale or his transferee. The thing that has made this case confusing is that the notice of intention to claim attorney's fees was not given *before* the auction before the courthouse door, so that the debtor could avoid it by payment of the debt but it was given *after* the auction of the property and before the execution of the deed by the bank under the power of sale in the security deed containing the power of sale. The reason for the delay in the execution of the deed and the collection of the amount bid at the sale is immaterial. It was delayed and during the delay the notice of claim for attorney's fees was given. The legal consequence of the fact that the creditor honored the sale bid at the auction of the property authorized by the security deed, even though delayed, rendered empty and ineffective any notice of intention to claim attorney's fees given *after* the auction and knocking off of the property to a purchaser. The rationale is simple and it is that such a notice did not give the debtor the opportunity to avoid the sale because the sale (which was later consum-

mated) was the conclusive obstacle to the right to fees in the absence of notice given ten days before the sale. The notice after the sale had no retroactive effect because this gymnastic could not reach back and give the debtor an opportunity to pay the debt and stave off the sale before it happened. The only way the notice given in this case could have been effective to give the right to the bank to deduct from the bid price the amount of fees contracted for would have been for the bank to repudiate the bid received and readvertise the property and make another sale at the courthouse door. The fact that a sale under power is not a judicial proceeding is irrelevant to the question here decided. It must be conceded by all that a debtor can establish an obligation for fees in such a case as this if he gives a notice more than ten days *before* a sale under power, the debt is not paid and the sale takes place and is consummated. So, the argument that a sale under power is not a judicial function is a red herring under the facts of this case, whereas, it is admitted that under other facts the obligation to pay attorney's fees may be established by the action of a debtor not reaching the level of a judicial function.

What we have ruled does not mean that the notice to bind for attorney's fees, given in this case, would not bind the debtor for attorney's fees in case the sale under power did not bring enough money to discharge the debt, and the bank proceeded to collect the balance by suit or sale of any other property conveyed by the security deed after ten days after receipt of the notice.

■ *The court costs.* We do not agree that the bank occupied the role of a mere stakeholder. Generally a stakeholder is a third party chosen by two or more persons to keep in deposit property or money the right or possession of which is contested between them, and to be delivered to the one who shall establish his right to it. It is one who is entitled to interplead rival or contesting claimants to property or funds in his hands. Perhaps the earliest conception of a stakeholder was that of one who holds a wager; but after occurrence of the event on which the wager was made, leaving only one claimant to the fund who makes demand for the money, he is no longer a mere

stakeholder; he is under a duty to pay over the fund to the party who has become entitled to it, absent some dispute as to the outcome of the event. No demand on the bank for the excess funds was ever made by the executrices. The judgment awarding the equity in the property to the widow, Mrs. Shelnutt, became final November 1, 1966, prior to the sale and long before the funds were paid in to the bank. That judgment was a matter of public record, of which the bank was charged with knowledge. It does not appear that Mrs. Shelnutt made any demand on the bank for the funds; rather she recognized the right of her son, Mr. Cochran, to receive them by virtue of the deed which she had executed to him. The only demand on the bank was that made by Mr. Cochran, and this the bank refused, asserting that the funds would be paid over to the executrices. While the bank was not claiming the surplus fund as its own, neither was there any rival claimant to Mr. Cochran. Hence, this was simply a suit by him to obtain from the bank that to which he laid claim, and which the bank had refused to deliver or pay over. The court properly rendered judgment in Cochran's favor for the excess funds and the costs ordinarily should have been assessed against the bank, especially since the court erred in its ruling on the question of attorney's fees. *Code* § 24-3401.

■ The injunction against the bank from paying out funds was mere surplusage. The only question for decision was how much money the bank should be required to pay to appellant. The facts as finally developed rendered it unnecessary to enjoin the bank. The motion to transfer the case to the Supreme Court is denied.

*Judgment reversed in part; affirmed in part. Bell, P. J., Jordan, P. J., Hall, Eberhardt, Pannell, Deen, Quilllian and Whitman, JJ., concur.*