CALVERT FIRE INSURANCE COMPANY et al., Plaintiff-Appellee,

v.

ENVIRONS DEVELOPMENT CORPORATION et al., Defendants,

Pringle Associated Mortgage Corporation, Defendant-Appellant.

CALVERT FIRE INSURANCE COMPANY et al., Plaintiffs-Appellees,

v.

ENVIRONS DEVELOPMENT CORPORATION et al., Defendants,

Pringle Associated Mortgage Corporation, Defendant-Appellant,

O'Neal Construction Co., Movant-Appellant.

Nos. 77–1505, 77–1839.

United States Court of Appeals, Fifth Circuit.

Aug. 30, 1979.

Rehearings Denied Oct. 26, 1979.

---

Charles E. Watkins, Jr., F. Carlton King, Jr., Atlanta, Ga., for Pringle.

Andrew Robert Greene, Edward L. Savell, Atlanta, Ga., for Calvert Fire Ins. Co.

Robert J. Abrams, Atlanta, Ga., for Lexington.

Raymond A. Cunningham, Brian W. Wertheim, Decatur, Ga., for intervenor O'Neal Construction Co.

Before AINSWORTH and VANCE, Circuit Judges, and BOOTLE, District Judge.*

BOOTLE, District Judge:

There are two appellants presenting unrelated legal issues. Pringle Associated Mortgage Corporation appeals from the district court's grant of summary judgment against its claim to proceeds payable under a fire insurance policy. O'Neal Construction Company appeals from the district court's denial of its motion to intervene pursuant to Fed.R.Civ.P. 24. We conclude that the district court erred in granting summary judgment against Pringle and that O'Neal should have been permitted to intervene. We, therefore, reverse.

### I. Pringle's Appeal

In 1972 Pringle Associated Mortgage Corporation (Pringle) loaned $2,000,000 to Lexington Developers, Inc. (Lexington) to fund the construction of sixteen two-story condominiums in Albany, Dougherty County, Georgia. Pringle secured the loan by accepting a security deed on the property from Lexington. Lexington procured insurance on the property from Calvert Fire Insurance Company (Calvert) and, as required by the provisions of the security deed, named Pringle as loss-payee under the policy's New York Standard Mortgage Clause. On August 8, 1974 a fire, of allegedly suspicious origin, destroyed one partially completed building and damaged others. The policy issued by Calvert was in force and covered the interests of both Lexington and Pringle with respect to this fire loss.

* District Judge of the Middle District of Georgia, sitting by designation.

In October 1974, Pringle declared Lexington's note in default and foreclosed. By letter dated October 24, 1974, Pringle gave notice to Lexington requiring payment within ten days to avoid an additional assessment of 12% attorney's fees. No payment being made, Pringle sold the property at public auction on November 5, 1974 pursuant to a power in the security deed. Pringle bought the property with a bid in the amount of $1,950,020.80 covering all principal and accrued interest but not covering the $234,000 attorney's fees allegedly due under the contract. Pringle did not seek judicial confirmation of this sale as provided by Georgia Code Ann. § 67–1503.[1]

After the fire and before foreclosure, Pringle began negotiating with Calvert concerning this fire loss. Around October 1, 1974, Pringle learned that Lexington had not filed proof of loss as required under the policy. Pringle subsequently filed its own proof of loss as it was entitled to do under the policy. Pringle and Calvert continued negotiations until early in 1975 when a tentative agreement was reached. At this point Lexington finally reared its head by filing a much belated proof of loss. As a result Calvert refused to pay anyone and sought to settle the matter in court. This suit was filed by Calvert as a declaratory judgment action against Pringle, Lexington, and various creditors of Lexington who had sought access to the insurance proceeds.

Pringle answered Calvert's complaint by asserting a counterclaim for the insurance and by cross-claiming against Lexington. Lexington responded with a motion for summary judgment which asserted that Pringle's cross-claim and counterclaim were in substance actions for a deficiency judgment against Lexington and thus barred by § 67–1503. The district court agreed and granted Lexington's motion.

The district court's ruling might be a plausible liberal construction of § 67–1503 but it does not represent the view which the Georgia courts are likely to accept. Section 67–1503 states that "no action may be taken to obtain a deficiency judgment unless the person instituting the foreclosure proceedings shall, within 30 days after the sale, report the sale to the judge of the superior court of the county in which the land lies for confirmation and approval, and obtains an order of confirmation and approval thereon." Section 67–1503 is in derogation of the common law and thus is construed strictly by the Georgia courts. *First National Bank & Trust Co. v. Kunes*, 128 Ga.App. 565, 197 S.E.2d 446 (1973). The purpose of the statute is, as the district court stated, to protect debtors from the burden of double payment where a foreclosure sale brings an unreasonably low price and thus results in a deficiency. *First National Bank & Trust Co. v. Kunes, supra.*

The Georgia courts have refused to ignore key statutory language which prohibits only an "action . . . to obtain a deficiency judgment . . . ." As a result two important principles have been established by the Georgia case law. The first is that § 67–1503 does not operate to extinguish a debt; it just limits the creditor's remedies. *Powers v. Wren,* 198 Ga. 316, 31 S.E.2d 713 (1944); *Turpin v. North American Acceptance Corp.,* 119 Ga.App. 212, 166 S.E.2d 588 (1969); *Marler v. Rockmart Bank,* 146 Ga.App. 548, 246 S.E.2d 731 (1978). And the second is that failure to have a sale confirmed does not prevent a creditor from pursuing other contractual security on the debt. *Salter v. Bank of Commerce,* 189 Ga. 328, 6 S.E.2d 290 (1939); *Marler v. Rockmart Bank, supra.*

In *Salter,* the creditor foreclosed on a second tract of land after an unconfirmed

---

1. Section 67–1503 is as follows: "When any real estate is sold on foreclosure, without legal process, under powers contained in security deeds, mortgages or other lien contracts, and at such sale said real estate does not bring the amount of the debt secured by such deed, mortgage, or contract, no action may be taken to obtain a deficiency judgment unless the person instituting the foreclosure proceedings shall, within 30 days after such sale, report the sale to the judge of the superior court of the county in which the land lies for confirmation and approval, and obtains an order of confirmation and approval thereon."

foreclosure sale of another tract left a deficiency. The court said:

> The inhibitive words "no action may be taken to obtain a deficiency judgment," considered with the context, refers to an "action" or suit in a court against a debtor for a deficiency "judgment," . . . The words do not inhibit subsequent sale under power of property *other than the property* which at a former sale under power had failed to "bring the amount of the debt."
>
> *Salter v. Bank of Commerce,* 189 Ga. at 331–32, 6 S.E.2d at 293. (Emphasis in the original).

The supreme court characterized the second sale under power as simply a contractual remedy affecting only the property conveyed in the deed and not as a deficiency judgment, prohibited by § 67–1503, which creates an original general lien against all of the debtor's property.

In *Marler,* the Georgia Court of Appeals adhered to the principles announced in *Salter* even though the previous foreclosure had been the subject of a confirmation proceeding in which the superior court refused to confirm the sale. The debtor had executed three security deeds to the creditor, each conveying a separate parcel of land as security for a separate promissory note. Upon default, the creditor foreclosed on all three properties. The first property sold at a substantial surplus over the note which it secured. The second sold at a substantial deficiency and a superior court refused to confirm this sale. The third tract sold for a small deficiency and no confirmation was sought. After being denied confirmation on the second sale the creditor sought to apply the surplus received from the first sale to the deficiencies on the second and third sales pursuant to open-end clauses in all three security deeds. The court of appeals said:

> The bank had [a] contractual right to apply any monies belonging to plaintiff coming into its possession to any existing indebtedness of the plaintiff to the bank. Because [the] foreclosure of a security deed did not extinguish the debt on that

parcel of property, but had the effect only of foreclosing the right to sue for a deficiency judgment, the sale of Land B and Land C for amounts less than that owed left the remaining amounts due on the note. The bank had the contractual right to apply the excess money from the sale of Land A to the deficiencies in the promissory notes on Land B and Land C.

> *Marler v. Rockmart Bank,* 146 Ga.App. at 550–51, 246 S.E.2d at 734.

██ Although no Georgia court has yet faced a creditor's claim to insurance proceeds as loss-payee following an unconfirmed foreclosure sale, this court is satisfied that Pringle's status as loss-payee gives it no less a separate contractual remedy than would an additional security deed on other property. Under *Salter* and *Marler,* we conclude that § 67–1503 does not bar Pringle's claim to the insurance proceeds.

The next inquiry is whether Pringle's claim to the insurance proceeds must fail for any other reason. Pringle has argued that it is proceeding on a separate and distinct contractual relationship between itself and Calvert. It wishes to prove that it is entitled to all of the proceeds by showing that the property was actually worth less than the amount bid at the foreclosure sale. Pringle argues that it is not bound by its bid as against Calvert though it would be in an action against Lexington. Alternatively, Pringle argues that the $234,000 attorney's fees are due as a part of the loan principal. At least this amount is unpaid and thus Pringle asks for insurance proceeds to that extent.

██ The problem with Pringle's arguments is that the real underlying dispute in this case is who should receive the insurance proceeds, Pringle or Lexington. Pringle is bound by its bid. *Nationwide Financial Corp. v. Banks,* 147 Ga.App. 73, 248 S.E.2d 54 (1978); *Whitestone Savings & Loan Ass'n v. Allstate Insurance Co.,* 28 N.Y.2d 332, 321 N.Y.S.2d 862, 270 N.E.2d 694 (1971); *Campagna v. Underwriters at Lloyd's London,* 549 S.W.2d 17 (Tex.Civ. App.1977). Pringle cites as authority for its position, *Corbin v. Aetna Life & Casualty*

Co., 447 F.Supp. 646 (N.D.Ga.1978). If *Corbin* stands for the principle that a bid such as was made in our case is not binding on the creditor, we disagree.

Since Pringle is bound by its bid, the debt has to that extent been satisfied and extinguished. Where a fire loss occurs and a loss-payee is thus vested with rights under the insurance policy, subsequent partial or full extinguishment of the debt giving rise to the insurable interest will reduce the loss-payee's interest in the proceeds to the extent the debt has been satisfied. *Rosenbaum v. Funcannon*, 308 F.2d 680 (9th Cir. 1962); *Mann v. Glens Falls Insurance Co.*, 541 F.2d 819 (9th Cir. 1976); *Insurance Co. of North America v. Citizens Insurance Co. of New Jersey*, 425 F.2d 1180 (7th Cir. 1970); *Hellman v. Capurro*, 92 Nev. 314, 549 P.2d 750 (1976); *Lembo v. Parks*, 372 N.E.2d 1316 (Mass.App.1978); *Campagna v. Underwriters at Lloyd's London, supra; Smith v. General Mortgage Corp.*, 73 Mich. App. 720, 252 N.W.2d 551 (1977); *Lutheran Brotherhood v. Hooten*, 237 So.2d 23 (Fla. App.1970); *Nationwide Mutual Fire Insurance Co. v. Wilborn*, 291 Ala. 193, 279 So.2d 460 (1973); *Whitestone Savings & Loan Ass'n v. Allstate Insurance Co., supra.* This rule is intended to prevent a creditor from receiving a double payment. The creditor's interest in the insurance proceeds is recognized as security for the payment of the debt. The insurance is an alternative source of payment and once the debt is paid by some other means any right to the insurance is thereby extinguished. Equity requires that subsequent events such as payment of the underlying debt not be ignored when the court distributes the insurance proceeds.

Based on the above discussion we conclude that the debt owed by Lexington to Pringle was satisfied to the extent of the full amount of Pringle's foreclosure sale bid. The only part of the debt remaining unpaid is the attorney's fees which Pringle alleges are due under the contracts as allowed by Georgia law. These amount to $234,000. That amount is the maximum which Pringle may recover from the insurance proceeds.

One last point needs to be addressed. The attorney's fees did not become due until almost three months after the fire loss. If it be argued that the maximum interest which Pringle had in the insurance proceeds was fixed on the date of the loss as the total amount of principal and interest then due and that since Pringle must be deemed as having collected said sum at the foreclosure sale it must also be deemed to be unable to assert any further interest in the insurance proceeds, we would reject such argument by pointing to the equitable purposes served by the case law above cited. Double payment is the evil to be avoided. It is unfairness to the debtor that prompts the rule. The question is not how much shall the insurance company pay, but how shall the proceeds be distributed. We conclude that, since under Georgia law the attorney's fees are treated as a part of the debt owed by Lexington to Pringle, no double recovery would result under the facts of this case by allowing Pringle to recover the attorney's fees. Assuming that attorney's fees are owed, Pringle may recover them from the insurance proceeds.

If no attorney's fees are due then Pringle would have no claim to the insurance proceeds. Lexington contends that none are due because Pringle failed to comply with Georgia Code Ann. § 20–506. In Georgia, a creditor can recover attorney's fees, as a percentage of the loan amount otherwise due, if the loan contracts so provide and if § 20–506 is observed. This statute requires a demand-notice letter giving the debtor ten days from receipt in which to pay the debt and thus avoid the attorney's fees. Lexington shows that the notice letter was dated October 24, 1974 and that the foreclosure sale was held on November 5, 1974. Lexington argues that Georgia Code Ann. § 81A–106(e) applies to the computation of time under § 20–506. Since the letter was sent by mail, § 81A–106(e) would thus add three days to the ten-day period. If this were done, the sale would have occurred before the expiration of the § 20–506 notice period and no attorney's fees would be due.

Section 81A–106(e) is not applicable to computations of time periods under § 20–506. It was not intended to be so. Section 20–506's ten-day period is required by the statute to be counted from the day of "receipt." *See, Cochran v. Bank of Hancock County,* 118 Ga.App. 100, 162 S.E.2d 765 (1968); *Adair Realty & Loan Co. v. Williams Brothers Lumber Co.,* 112 Ga.App. 16, 143 S.E.2d 577 (1965). The day of receipt is not established in this record so the validity of the attorney's fee notice cannot be settled as a matter of law on this record. That issue must be determined by the trial court on remand.

## II. O'Neal's Intervention

■ After the suit was filed, O'Neal Construction Co. (O'Neal) sought to intervene and presented claims against both Lexington and Pringle. O'Neal alleged that it had built the destroyed building as general contractor for Lexington and that the fire had destroyed its supplies and materials and the product of its labor. O'Neal claimed that Lexington promised to procure insurance to protect O'Neal's interest in the property but failed to do so. A second claim is based on negligence; Lexington negligently caused the fire. On November 18, 1975, the district court denied O'Neal's motion upon the ground that O'Neal did not have "an interest relating to the property or transaction which is the subject of this action" and noting that O'Neal's claim had not been reduced to judgment. O'Neal appealed but later permitted the appeal to be dismissed for want of prosecution. O'Neal then sought a judgment in the state courts on the two claims above outlined. On December 8, 1976, O'Neal procured a default judgment against Lexington for $130,000. Subsequently, a second motion to intervene

in this suit was presented to the district court alleging the state court judgment and claiming intervention as of right as a judgment creditor. However, the state court judgment was not final since it had been appealed. The state court proceeding remained in the Georgia appellate courts for a long period with two decisions rendered by the Georgia Court of Appeals and one by the Georgia Supreme Court.[2] These appellate proceedings resulted in a remand to the trial court for a redetermination of O'Neal's damages. The record in this case does not indicate that a final judgment lien has ever been procured by O'Neal. On March 31, 1977, the district court, treating O'Neal's motion both as one for reconsideration of the November 18, 1975 order and as a new motion to intervene, denied intervention for the second time. The district court concluded that no case or controversy existed between Calvert and O'Neal and that therefore there was no federal jurisdiction.[3]

Under Fed.R.Civ.P. 24(a)(2), as a first requirement, an applicant for intervention must claim an interest relating to the property or transaction which is the subject of the action. O'Neal's contention that it can intervene as a judgment creditor fails to meet this hurdle in view of the lack of any final judgment in the state court action and the apparent lack of any final judgment lien. However, an examination of the record suggests that O'Neal has alleged facts sufficient to raise a question whether it has an equitable lien on the insurance proceeds.

■ O'Neal has consistently maintained that it has a claim because Lexington breached a contractual duty to provide insurance for O'Neal's interest in the property. This contention assumes that O'Neal had an insurable interest in the property.

**2.** *Lexington Developers, Inc. v. O'Neal Constr. Co., Inc.,* 142 Ga.App. 434, 236 S.E.2d 98, *rev'd* 240 Ga. 376, 240 S.E.2d 856 (1977), *on remand,* 145 Ga.App. 309, 243 S.E.2d 577 (1978).

**3.** Lexington contends that O'Neal's failure to prosecute its appeal from the November 18, 1975 order established that order as the law of the case. We disagree. First, the district court, in its March 31, 1977 order, treated O'Neal's second motion to intervene as a mo-

tion for reconsideration of its earlier order. Secondly, the district court's ruling in the first order that O'Neal did not sufficiently claim an interest in the property or transaction which is the subject of the main action is clearly erroneous and following that error would work a manifest injustice against O'Neal. *See, Morrow v. Dillard,* 580 F.2d 1284, 1290 (5th Cir. 1978).

The facts suggest that O'Neal was entitled to a contractor's lien pursuant to Georgia Code Ann., ch. 67–20 and that it had filed its claim of lien prior to its first motion to intervene. This means that it had an insurable interest.

■ Although the problem has rarely arisen of late, perhaps because such issues are foreclosed by todays standard form contracts, the courts of this country have faced the issue of creditors' claims to fire insurance proceeds on property which secured their debts. The general rule is that a mortgagee or lienholder has no claim to the benefit of a fire insurance policy unless he has been named loss-payee or the policy has otherwise been assigned to him. *Wheeler v. Factors' and Traders' Ins. Co.,* 101 U.S. 439, 25 L.Ed. 1055 (1880),

> But it is settled by many decisions in this country, that if the mortgagor is bound by covenant or otherwise to insure the mortgaged premises for the better security of the mortgagee, the latter will have an equitable lien upon the money due on a policy taken out by the mortgagor to the extent of the mortgagee's interest in the property destroyed. *Wheeler v. Factors' and Traders' Ins. Co., supra* at 442, 25 L.Ed. at 1057,

*Atlantic Land and Improvement Co. v. Carey Citrus Products Corp.,* 93 F.2d 930 (5th Cir. 1938); *Weiner v. Sentinel Fire Ins. Co.,* 87 F.2d 286 (2d Cir. 1937). The rule announced in the above cases has been followed in Georgia. *Suttles v. Vickery,* 179 Ga. 751, 177 S.E. 714 (1934); *Ennis v. Haralson Brothers & Co.,* 101 Ga. 282, 28 S.E. 839 (1897). Similar claims by holders of mechanics liens have been disposed of by the same rule. *In re San Joaquin Valley Packing Co.,* 295 F. 311 (9th Cir. 1924); *Healey Ice Machine Co. v. Green,* 181 F. 890 (C.C.E.D.N.C.1910) *aff'd* 191 F. 1004 (4th Cir. 1911).

> [W]here the owner of real estate insures his interest therein against loss by fire, the holder of a mechanics lien on the property has no claim upon the proceeds of the insurance money, unless by contract the owner was obligated to insure

for his benefit. [Citations omitted.] The same is true of the relation between mortgagor and mortgagee, landlord and tenant, lessor and lessee.

*In re San Joaquin Valley Packing Co., supra* at 313.

The underlying rationale for the exception to the general rule above stated would seem to be that where a claimant had an insurable interest in property and the insured made a valid and binding promise to insure the claimant's interest but instead merely obtained insurance for the insured's own benefit, equity will intervene to prevent the claimant's being injured by the breached promise and to prevent the unjust enrichment of the wrongdoer. If O'Neal can prove that Lexington made a valid and binding promise to provide insurance to protect an insurable interest owned by O'Neal, then an equitable lien in the insurance proceeds arises in O'Neal's favor. We, of course, attempt no forecast as to O'Neal's ability to carry its burden of proof in this regard.

■ The next requirement for intervention as of right under Rule 24(a)(2) is that the applicant be so situated that the disposition of the property may as a practical matter impair or impede his ability to protect that interest. O'Neal has alleged that the insurance claim owned by Lexington is the only asset remaining to satisfy the obligations of Lexington's creditors. Additionally, O'Neal has alleged that judgments remain outstanding and unpaid against Lexington and against two of the major principals of that corporation. These allegations have not been controverted by Lexington. Pringle as loss-payee and as a prior holder of a security deed must be satisfied first out of any monies found due under the insurance policy. O'Neal must look to the share of the proceeds which are left for Lexington as the source of any satisfaction it might gain. We note that Lexington and Calvert entered into a settlement agreement by which Calvert was to pay $264,538.92 plus $18,461.00 in interest in settlement of the loss. If Pringle is entitled to satisfaction of the $234,000 attorney's fee,

O'Neal would receive very little of its claim if the settlement figure stands. O'Neal has an interest in seeing that the maximum amount and value of the fire loss is established between Lexington and Calvert. It will have no other chance to participate in this issue. In this way, O'Neal's interest may as a practical matter be impaired by the conclusion of this lawsuit without its participation.

The last requirement of Rule 24(a)(2) is that O'Neal's interest not be adequately represented by any other party to the suit. Obviously the interests of Lexington and O'Neal are diametrically opposed. Calvert seeks to minimize its liability on the fire loss while O'Neal must seek to maximize that liability. Pringle simply does not care about O'Neal's interest since it will be satisfied first in any event. None of these parties can be said to adequately represent O'Neal in this dispute.

Based on the above, we find that O'Neal does have a right to intervene as a matter of right pursuant to Rule 24(a)(2) on the theory that if may have an equitable lien in the insurance proceeds. As for the district court's holding that no case or controversy exists, we disagree. The constitutional requirement is certainly met by the legal and equitable interrelationships and disputes between O'Neal, Lexington, and Calvert.

We must now address the consequences of this holding. Without O'Neal's participation, Lexington and Calvert concluded a tentative settlement which effectively limits O'Neal's recovery if Pringle is indeed entitled to attorney's fees. Unless O'Neal agrees to the consent judgment, it must be set aside.

The judgments in these consolidated cases are reversed and remanded for further proceedings in accordance with this opinion.

REVERSED and REMANDED.