## A99A2510. HILL v. THE STATE.
(532 SE2d 491)

SMITH, Judge.

Appellant J. I. Terrell "Pete" Hill was indicted by a Madison County grand jury for malice murder, but a jury convicted him of involuntary manslaughter only. His motion for a new trial was denied, and he appeals. Finding no error, we affirm.

1. Hill enumerates the general grounds. Construed to support the verdict, the evidence shows that on January 14, 1997, the five-month-old son of Hill and his live-in girlfriend was taken to Egleston Children's Hospital in Atlanta, where he died five days later. Because physicians were concerned about the suspicious nature of the child's injuries, they consulted a pediatrician trained in injury and child abuse evaluation. The pediatrician ordered an autopsy performed, and both she and a physician from the Georgia State Crime Lab concluded that the cause of death was "Shaken Baby Syndrome." The doctors displayed for the jury CT scans showing the brain injury.

The baby's mother testified that on the night of the incident, the baby had been crying continuously and would not stop. When the baby would not take his bottle, Hill picked him up and shook him before placing him on the cold floor. The mother testified that she remained in another room while this happened because she feared that Hill would beat her. Hill then bounced the baby on his knee and shook him until the child lost consciousness and "went limp." Hill later threatened the baby's mother, saying that if she ever said anything, he would "beat the hell out of" her.

The State also presented testimony from a child care provider who lived with Hill and the mother immediately after the birth of the child.[1] This witness testified to an incident that occurred when the infant was three weeks old. According to her testimony, the baby was colicky and often cried. The witness heard the baby continually crying during the night and then heard cursing and movement. She entered the bedroom and found Hill grasping the baby around the body and pushing him down onto the bed "real hard." When she protested to Hill, he responded, "You better take the little S.O.B. before I kill him."

"A person commits the offense of involuntary manslaughter in the commission of an unlawful act when he causes the death of another human being without any intention to do so by the commission of an unlawful act other than a felony." OCGA § 16-5-3 (a). The trial court instructed the jury that a person commits "involuntary manslaughter when that person causes the death of another human

---

[1] This witness lived with the couple for two months after the mother's difficult childbirth and subsequent inability to care for the newborn.

being without any intention to do so by the commission of simple battery." It is uncontroverted that Hill was bouncing and shaking the child on his knee immediately before the child lost consciousness and went limp. The causal relationship between Hill's physical contact with his son and the child's death was supported by the testimony of the pediatrician and the medical examiner that the child's death resulted from "Shaken Baby Syndrome." While Hill contends the witnesses against him gave inconsistent statements or qualified their opinions, "[w]hen reviewing the sufficiency of evidence on appeal, this Court does not weigh the evidence presented or determine the credibility of witnesses. [Cit.]" *Burnett v. State*, 239 Ga. App. 592, 593 (521 SE2d 629) (1999). A rational trier of fact, relying on the evidence at trial, could have found Hill guilty of involuntary manslaughter beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); see *Powell v. State*, 271 Ga. 575 (1) (522 SE2d 656) (1999).

2. Hill also asserts that the trial court erred in giving a "similar transaction" instruction to the jury regarding the testimony of the child care provider that did not sufficiently limit the purpose for which that testimony could be considered. He contends the charge was overbroad because the trial court instructed the jury that, if it believed a similar transaction had been proved, "you are strictly limited in your consideration of the evidence as to the identity, state of mind and conduct of the defendant in connection with the offense charged in the indictment."

The child care provider's testimony was not evidence of a similar transaction, as contended by Hill, but of a "prior difficulty" between the defendant and the victim. The more limited jury instruction regarding similar transactions therefore was not necessary for the jury's consideration of the testimony of prior difficulty.[2]

"Unlike similar transactions, prior difficulties between the parties are not independent acts or occurrences, but are connected acts or occurrences arising from the relationship between the same people involved in the prosecution and are related and connected by such nexus." (Citations and punctuation omitted.) *Temple v. State*, 238 Ga. App. 146, 147 (2) (517 SE2d 850) (1999). Evidence of a defendant's prior act toward the same victim, whether an assault, a quarrel, or a

---

[2] Both parties and the trial court treated this evidence as a similar transaction. This error did not work any prejudice to Hill, however, but rather benefitted him. While prior difficulties are admissible to show that past actions may be indicative of the defendant's actions at the time of the offense charged, similar transaction evidence is inadmissible for such a broad purpose. *Temple v. State*, 238 Ga. App. 146 (517 SE2d 850) (1999). Moreover, a Uniform Superior Court Rule 31.3 hearing is required for similar transactions but not required for evidence of prior difficulties. *Wall v. State*, 269 Ga. 506, 509 (500 SE2d 904) (1998).

threat, is admissible as "evidence of the relationship between the victim and the defendant and may show the defendant's motive, intent, and bent of mind in committing the act against the victim which results in the charges for which the defendant is being prosecuted. [Cits.]" *Wall v. State*, 269 Ga. 506, 509 (500 SE2d 904) (1998).

As evidence of a prior difficulty, this testimony may be considered more broadly than evidence of a similar transaction. Prior difficulties are relevant in construing the defendant's current state of mind or conduct in light of his previous actions toward the same victim. "Evidence of previous difficulties between a defendant and a victim is admissible to show the defendant's intent, bent of mind, and *course of conduct*." (Citations omitted; emphasis supplied.) *Kettman v. State*, 257 Ga. 603, 606 (7) (362 SE2d 342) (1987). Such evidence may be admitted to show a continuing pattern of conduct in committing battery upon the victim. *Sutton v. State*, 236 Ga. App. 363, 364-365 (511 SE2d 888) (1999).

The earlier incident between Hill and his infant son was virtually identical to the events that took place shortly before the child's death. The fact that Hill, on a previous occasion, responded to his son's continual crying by physically attacking him and acknowledging that he might kill the child was highly probative of Hill's state of mind and course of conduct on the later occasion.

Because testimony of prior difficulties has considerably more relevance than evidence of similar transactions, the appropriate jury instruction is correspondingly broader in scope. The trial court may instruct the jury that such evidence may be considered "for a limited purpose on the question of the defendant's conduct, bent of mind, motive, scheme, purpose, or intent to commit the crime with which he was charged." *O'Toole v. State*, 258 Ga. 614, 617 (6) (373 SE2d 12) (1988); *Wall*, supra at 509. We find no error in the jury instruction regarding the testimony as to prior difficulties between Hill and his infant son.

3. Finally, Hill enumerates as error the admission of a previous conviction as impermissible character evidence. During the defense's case and after three witnesses testified for Hill, the State requested a hearing outside the presence of the jury. At the hearing, the prosecutor requested that the State be allowed to introduce Hill's prior conviction for statutory rape, contending that Hill had placed his character in evidence through the testimony of the witnesses on his behalf and through cross-examination of the State's witnesses. The trial court agreed that Hill had offered evidence showing his good character and permitted the State to introduce a certified copy of Hill's conviction. We agree that Hill repeatedly offered evidence tending to show his good character and thereby "opened the door" for rebuttal by the State.

In general, evidence of a criminal defendant's bad character or prior convictions is not admissible unless he first puts his character in issue. OCGA § 24-9-20 (b). The presumption that one is of good character is part of or accompanies the presumption of innocence, and "the State cannot rebut or question the presumption of the defendant's good character unless the defendant discards the presumption thus afforded and elects to put his actual character in issue by evidence of other witnesses or by his own testimony. [Cits.]" (Punctuation omitted.) *Morrison v. State*, 232 Ga. App. 846 (502 SE2d 470) (1998). "To open the door to such evidence, a defendant must intentionally elect to place his good character in issue. [Cit.]" *Stinson v. State*, 221 Ga. App. 758, 759 (1) (472 SE2d 538) (1996). Once the defendant is found to have intentionally opened the door, the prosecutor may respond with evidence of the defendant's bad character in the form of prior convictions or other testimony. *Morrison*, supra at 847.

Here, the trial record indicates that, at several points during the trial, Hill offered evidence tending to show his good character. Hill argues in his brief that in each case the evidence was offered for other noncharacter reasons, "only to specifically rebut or preempt allegations that had previously been raised by the State." He contends that the references to character were merely inadvertent and tangential to the main purpose of rebuttal.

> Whether a statement making reference to the defendant's good character is merely inadvertent or manifests a conscious election is a question of fact, determined primarily upon the trial court's assessment of the intent of the accused and his counsel. Such factual and credibility determinations are generally accorded great deference by a reviewing court. [Cits.]

*King v. State*, 209 Ga. App. 529, 532 (3) (433 SE2d 722) (1993).

During his cross-examination of the child's mother, defense counsel asked about Hill's generosity to others. He also repeatedly asked the child care provider, also a State's witness, about the good deeds Hill had done for the witness and for several other people.[3] These inquiries were not limited to any particular transaction, and they were certainly broad enough to be aimed at bolstering Hill's character. Hill's argument that the testimony was offered to rebut

---

[3] Throughout cross-examination of the State's witnesses, defense counsel asked many questions relating to Hill's kindness and generous nature: "Pete always helped people out if they needed money didn't he?" "Pete helped you out some financially, didn't he? . . . Pete was always helping people out financially, wasn't he?"

earlier allegations is without merit, as the evidence clearly exceeded the bounds of rebuttal and sought to establish a general appearance of good character. In its case-in-chief, the State never referred to Hill's financial generosity, and questions about Hill's kindness or generous nature were not immediately relevant to any material issue.

Hill also opened the door to his character in his presentation of direct evidence using his own witnesses. While questioning Hill's niece on direct examination, defense counsel asked questions relating to the witness's conduct around her and the infant victim.[4] These inquiries also were attempts to admit evidence of Hill's character. Finally, during direct examination of Hill's sister, defense counsel asked her, "[h]ow was Pete around the baby?" and she responded, "[h]e was a great father." This amounts to evidence of good character that may be rebutted by a prior conviction. *Jackson v. State*, 198 Ga. App. 447, 448 (2) (402 SE2d 279) (1991).

With these numerous questions to the State's and his own witnesses, Hill opened the door to his character, and the State was permitted to respond with evidence of the prior conviction. *Morrison*, supra; *Campbell v. State*, 221 Ga. App. 105, 106 (1) (470 SE2d 503) (1996) (no error in admission of defendant's prior convictions for traffic offenses after defendant testified to participation in various volunteer organizations).

*Judgment affirmed. Pope, P. J., and Miller, J., concur.*

DECIDED MARCH 24, 2000.

*Billy I. Daughtry, Jr.,* for appellant.
*Robert W. Lavender, District Attorney,* for appellee.

---

[4] Defense counsel asked Hill's nine-year-old niece, "Was Uncle Pete ever mean to [the victim] that you ever saw? . . . Was Uncle Pete nice to [the victim]? . . . Has Uncle Pete always been nice to you? . . . Has he ever cursed at you or cursed around you or anything?"