**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and BRANCH, J.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**May 2, 2013**

# In the Court of Appeals of Georgia

A13A0711. HUDSON v. THE STATE.

PHIPPS, Presiding Judge.

Anthony Rudyard Hudson with charged with having committed criminal trespass, by entering the premises of another person after he had received notice that such entry was forbidden.[1] A jury returned a guilty verdict, and a judgment of conviction was entered thereon. In this appeal, Hudson challenges the admission of certain evidence and the propriety of a jury instruction. We affirm.

The state presented the following evidence at trial. The premises at issue was a hair salon that was owned and operated by a woman with whom Hudson had

---

[1] OCGA § 16-7-21 (b) (2) ("A person commits the offense of criminal trespass when he or she knowingly and without authority . . . [e]nters upon the land or premises of another person . . . after receiving, prior to such entry, notice from the owner, rightful occupant, or, upon proper identification, an authorized representative of the owner or rightful occupant that such entry is forbidden.").

fathered a child out of wedlock. The child was born in 2008 or 2009. In October 2009, a superior court denied Hudson's petition to obtain rights to the child. And as of the date of the criminal trespass, February 1, 2012, Hudson had not legitimated the child, had not obtained legal custody of her, and had not secured any visitation rights. While the child's mother had initially allowed Hudson to spend time with their daughter, around September 2011, she abruptly ended the visitations for reasons not disclosed at trial.

Hudson embarked upon a public protest at or near the woman's salon. On September 29, 2011, while working inside her salon, the child's mother was informed by a customer that Hudson was standing outside, less than 50 yards away, displaying a sign. The woman went outside and discovered Hudson standing where described and holding a sign with language: "Boycott [salon] for cruelty to her father and daughter, call the bitch, [salon's telephone], poison her baby." The woman took pictures of Hudson and his sign, which were shown to the jury. The woman called the police, but when police arrived, neither Hudson nor his sign could be located.

According to the salon owner, Hudson made numerous visits to her salon's parking lot or breeze way, sometimes three or four days a week, despite her repeated and emphatic pleas to him not to return to the property. Hudson displayed signs and

2

handed out fliers to individuals passing by, placed fliers on vehicles parked in the salon's parking lot, strewed fliers onto the floor of the breeze way leading from the parking lot to the salon, and jammed fliers into the salon's doorway. The salon owner collected many of the fliers, examples of which were shown to the jury. The fliers depicted the salon owner's face, and contained language such as "Owner of [salon name]," "child abuser," and "SPERM THIEF"; the fliers also included language such as: "FETAL TORTURE," and "!Domestic Terror!"; and the fliers accused the salon owner of having "poisoned baby [their child's name]," and of having "filed false charges to keep baby's daddy from protecting his child."

The woman testified that, although Hudson continued to come to her salon, the breeze way, the parking lot, and the general area of her business, she typically did not call police unless Hudson entered the salon. On December 30, 2011, Hudson walked into her salon without her permission. This time, he tried to take their daughter away from the salon. She dialed 911 for police. The salon owner testified that she had sole physical and legal custody of the child; and on that day, she repeated to Hudson that he was supposed to stay away from her and the child and leave them alone. Hudson spoke a few words to the child, then walked briskly out the door.

When an officer arrived, Hudson returned to the salon. The salon owner provided at trial this account of what unfolded. Emphatically, she told the officer of Hudson's persistent visits to or near the premises of her business, that she had repeatedly told him not to return, that she previously had called police about Hudson's ongoing and escalating conduct, that she did not want Hudson on the premises of her business, and that she wanted law enforcement to somehow protect her and the child from Hudson. Hudson, however, insisted to the officer that he had legal rights to the child. Thus, the officer advised the woman that he would give Hudson the benefit of the doubt; thereupon, the officer issued Hudson an oral warning not to come back to the premises unless he had with him documented proof of his right to be there, otherwise he was going to jail.

The police officer who responded to the 911 call that day gave a similar account. He arrived at the salon and was met by a woman who reported that Hudson had come to her workplace and tried to get their daughter to leave with him, but that he had no visitation rights. Based on the woman's description of Hudson, the officer realized that, while traveling to the scene, he had seen Hudson about three blocks away; Hudson was displaying some type of sign. While the officer was at the salon, Hudson returned and told the officer that he had been at that location trying to get his

4

child because the child's mother had been refusing to permit him visits. But the woman was complaining that she did not want Hudson at her place of business again. The officer testified that he thereupon issued Hudson an oral criminal trespass warning with regard to that business location. Elaborating, the officer testified that he told Hudson in no uncertain terms that he was not to come back to that particular address and that, if he returned, he would go to jail; Hudson responded that he understood.

But on February 1, 2012, Hudson again went inside the salon, even though he had not been invited back there. He announced to the owner that he was there to see his child. She grabbed her phone and called the police. As she was explaining her emergency to the 911 operator, Hudson dashed out of the salon. Based on that entry upon the premises, Hudson was arrested and tried for criminal trespass.

Hudson called no witnesses, but took the stand. He conceded going inside the salon on February 1, acknowledging that a court in one county had denied his legitimation petition and explaining that he nevertheless wanted to see his child and wanted further to discuss with his child's mother a legitimation petition he was planning to file in a different county. She had responded by calling police. Hudson characterized his relationship with his child's mother as strained, and his visits with

5

their daughter as sporadic; but he denied that either the child's mother or any police officer had ever told him not to go to her place of business. His September 29 visit to the area of the salon was admittedly to protest what he saw as mistreatment of his daughter. Hudson testified that he was similarly protesting on December 30, and that, while he had told the police officer questioning him that day that he had no official legitimation document, the officer did not tell him not to return to the salon.

1. Hudson asserts that the trial court erred by allowing the state to show the jury fliers he had distributed and a picture of the sign he had displayed, asserting that the evidence was more prejudicial than it was probative.

Evidence of prior difficulties, such as the sign and fliers in this case,[2] is ordinarily "admissible to show that past actions may be indicative of the defendant's actions at the time of the offense charged."[3] As has been repeatedly held:

> Evidence of prior difficulties between a defendant and a victim is generally admissible when the crime charged was perpetrated against the

---

[2] See generally *Temple v. State*, 238 Ga. App. 146, 147 (2) (517 SE2d 850) (1999) (noting that "prior difficulties between the parties are not independent acts or occurrences, but are connected acts or occurrences arising from the relationship between the same people involved in the prosecution and are related and connected by such nexus").

[3] *Hill v. State*, 243 Ga. App. 124, 125-126 (2), n. 2 (532 SE2d 491) (2000).

victim and the evidence demonstrates: (1) the relationship between the defendant and victim, and (2) the defendant's motive, intent or bent of mind.[4]

The images and language incorporated into the sign and fliers that Hudson displayed or distributed concerning his child's mother at or near her workplace "most certainly demonstrated the state of the relationship between [Hudson] and [his child's mother]," and were "highly relevant" to show his "abusive bent of mind toward her."[5] Hudson's bare assertion that the evidence should have been excluded as unduly prejudicial falls short of demonstrating abuse of discretion.[6]

2. Hudson contends that the trial court erred by charging the jury on the custody of children who have not been legitimated.

---

[4] *Tuff v. State*, 278 Ga. 91, 92 (2) (597 SE2d 328) (2004) (footnote omitted); *Quintero v. State*, 279 Ga. App. 497, 498 (631 SE2d 723) (2006) (citation omitted). See *Brady v. State*, 270 Ga. 574, 578-579 (5) (a) (513 SE2d 199) (1999) ("Although motive is not an essential element in proving the crimes charged, the State is entitled to present evidence to establish that there was a motive.").

[5] *Quintero*, supra; see *Appling v. State*, 246 Ga. App. 556, 557 (541 SE2d 129) (2000).

[6] See *Brooks v. State*, 281 Ga. 514, 517 (3) (640 SE2d 280) (2007) ("The admission of relevant evidence that is challenged on the basis that its probative value is outweighed by its prejudicial impact is within the sound discretion of the trial court.").

At the charge conference, the judge proposed giving a "charge on legitimation and the rights of a father to a child who has not been legitimated, which are none." Hudson's attorney objected, asserting that the issue was not related to a criminal trespass prosecution and that the instruction would only confuse the issues for the jury. The judge overruled the objection, thereafter charging the jury: "[O]nly the mother of a child born out of wedlock is entitled to custody of the child unless the father first legitimates the child as provided by Georgia law. Otherwise, the mother may exercise all parental power over that child."

"To authorize a jury instruction on a subject, there need only be produced at trial slight evidence supporting the theory of the charge."[7] In the instant case, whether Hudson was authorized to enter the premises based upon a legal right he had to the proprietor's child was raised by the trial evidence. Moreover, the charge given to the jury was a correct principle of law.[8] But even if the evidence adduced at trial was insufficient to authorize a charge on that principle, then "[t]he true question is

---

[7] *Davis v. State*, 269 Ga. 276, 279 (3) (496 SE2d 699) (1998) (citation omitted).

[8] See OCGA § 19-7-25 ("Only the mother of a child born out of wedlock is entitled to custody of the child, unless the father legitimates the child as provided in Code Section 19-7-21.1 or 19-7-22. Otherwise, the mother may exercise all parental power over the child.").

whether an abstractly correct charge not authorized by the evidence is calculated to confuse and mislead the jury. Where it is obviously highly probable that the error, if existing, did not contribute to the verdict, a reversal will not result."[9] Viewed in its entirety, the final charge was not likely to confuse the jury regarding Hudson's guilt or innocence of the charged offense of criminal trespass.[10] We discern no basis for reversal.

*Judgment affirmed. Ellington, C. J., and Branch, J., concur.*

---

[9] *Neal v. State*, 290 Ga. 563, 566 (3) (722 SE2d 765) (2012) (citations and punctuation omitted).

[10] See generally *Rojas v. State*, 280 Ga. 139, 140-141 (4) (625 SE2d 750) (2006); *Sherrod v. State*, 157 Ga. App. 351, 352 (3) (277 SE2d 335) (1981) ("Harmful error results when an inapplicable instruction might reasonably draw the jury away from the true issues in dispute or if the erroneous instruction is inapplicable to a vital issue in the case.") (citation and punctuation omitted).