## 53677. LEXINGTON DEVELOPERS, INC. v. O'NEAL CONSTRUCTION COMPANY, INC.

QUILLIAN, Presiding Judge.

The prior holding of this court in this case, 142 Ga. App. 434 (236 SE2d 98), was reversed on certiorari by the Supreme Court (240 Ga. 376), and "the judgment of the trial court [was] affirmed." However, the remittitur to this court required "such further action be taken by the Court of Appeals as may be necessary to give effect to the opinion filed in this case." Thus, we will consider the remaining enumerations of error.

O'Neal Construction Company filed its complaint against the defendant, Lexington Developers, on June 25, 1976. Because the defendant had moved and had not changed its address, service was made through the office of the Secretary of State. The action went into default. Thereafter, defendant filed a motion to open default which was denied on November 5, 1976. Defendant filed a motion for continuance, dated December 6, 1976, to obtain the presence of Mr. Colodny, president of defendant corporation, who was outside the United States. That motion was denied by an order dated December 3, 1976. Jury trial was held without the defendant's principal witness and verdict was for the plaintiff for $130,000,

plus costs. Defendant appeals. *Held:*

1. The defendant enumerated as error, service of process upon him through the office of the Secretary of State. The Supreme Court reversed our holding in this case and held that the defendant was properly served.

2. We need consider only one further enumeration. It is alleged the trial court erred in denying defendant's right to introduce impeaching testimony by use of prior inconsistent statements of the plaintiff's principal witness. We agree.

Defendant suffered a default judgment to be obtained against them. Their motion to open default was denied. A jury trial was held to determine the amount of damages. Plaintiff's principal witness to establish the amount of damages, was its president, Mr. O'Neal. Mr. O'Neal admitted that he had been ordered to produce "certain documents in court today as evidence of what [he] lost."

He was asked: "Q. Do you have any such checks. . . A. I don't have any checks. The checks was [sic] turned over to Lester Colodny and Dick Feldman [Officers of defendant corporation] at the time the insurance claim was processed. They knew I didn't have any checks. Q. Do you have any bills or other records that would indicate what you have paid out? A. Yes, I've got some bills here. They have the biggest part of them. . . The rest of the bills and the checks were turned over to them so they could process their fire insurance claim. They never was [sic] returned to me. . . Q. Do you have any other proof. . .? A. No. The rest of them was [sic] turned over to Dick Feldman and Lester Colodny. . . The invoices, the checks and the paid receipts was [sic] turned over to Lexington. Q. So, you have nothing else, then, in your possession except the one document you have identified for me here and that you say is labor, is that correct? A. Yes."

Counsel for defendant then attempted to lay a foundation for impeachment. "Q. . . Do you recall a deposition that was taken of you in another action involving the same matter in federal court, or substantially the same matter, on July 29, 1975? A. I've gave [sic] you so many depositions. If you will let me look at it a minute, I can tell you. . . Q. So, you don't specifically, then, remember that deposition? A. If you would let me

look at it, I could tell you whether I gave it. The Court: Is that in this case? Counsel for Defendant: No, it's not, Your Honor. The Court: Well, take it back. We are not going to go through all that if it's in another case. Counsel for Defendant: If it please the Court, I'm offering it for credibility. The man has just testified that he turned over all the records — The Court: But the proper way to do it is let him have a copy of it to look at and call his attention to the line and page and then ask him the questions, but just to hand to him a thick volume and say — Counsel for Defendant: No, I'm going to call his attention to the line and page, Your Honor. The Court: But it's in a different case entirely. Counsel for Defendant: If it please the Court, the Court is aware of some other proceedings in this case prior to coming in here today. We were in an intervention. There was a deposition taken involving these very same actions, at which time Mr. O'Neal — The Court: But you just got through telling me it's in the federal court and not here. Have we taken a deposition in this case in this Court? Counsel for Defendant: No, Your Honor, I was ordered to go to trial Friday, so I have not had time to do that. The Court: Sustain the objection. I am not going to let you go into that action in federal court. . . Q. Do you ever recall making a statement, Mr. O'Neal, that you had all the records and had them in good order and would have them available for me? A. Pertaining to this case here? A. Pertaining to this same fire loss that you are claiming before this jury today. A. I couldn't say whether I did or didn't."

To place this legal issue in a proper perspective, we should recount the events leading up to this point in the trial. The Supreme Court held that through the fault of the defendant he was never served, but proper service was effective through the office of the Secretary of State. The certificate of the Secretary of State showed that it did not serve the defendant. The defendant, a corporation, is a legal but fictional entity. It exists only through its officers and employees. The corporation was not served and its principal officer, the president, Mr. Colodny was in Iran. The motion to open default was denied November 5, 1976. Defendant's motion for a continuance to secure the return of Mr. Colodny, "the only representative of the Defendant

who dealt with the Plaintiff concerning the subject matter of this action," was denied. Although the motion was dated December 6, 1976, it was denied by an order dated December 3, 1976. Trial commenced December 7, 1976. Defendant was forced to trial without its principal witness. The defendant attempted to impeach the plaintiff's principal witness, its president, by use of a deposition taken in another trial. That trial was in federal court. The federal case was not between the parties in this case, but the plaintiff in this case filed for intervention in the federal action and the defendant took the deposition of Mr. O'Neal. Thus, the deposition was between the parties to this action and involved the same subject matter.

We find that the deposition tendered for use in impeachment of the plaintiff's president comes within the grounds of Code § 38-1803, which provides, in part, that "[a] witness may be impeached by contradictory statements previously made by him as to matters relevant to his testimony and to the case. . ." The same parties are involved in this case as in the deposition. The subject matter of that part of the deposition attempted to be used was the same as that in the instant action — supporting evidence for the amount claimed due from the defendant. The subject matter of the impeaching question was relevant and material to the only issue being tried — the amount of damages. It concerned impeachment of the principal witness for the plaintiff. And, as the defendant had been denied its only witness concerning the amount of the damages, the adverse ruling was crucial to its defense.

Our Supreme Court has held that "[a] witness testifying *ore tenus,* may be contradicted and thus discredited, by his depositions previously taken in the same case, or in a different case involving the same issues." *Molyneaux v. Collier,* 30 Ga. 731 (2); cf. *Krasner v. Lester,* 130 Ga. App. 234, 235 (1) (202 SE2d 693); accord, cf. IIIA Wigmore on Evidence 1040, § 1035; 98 CJS 531, Witnesses, §§ 573, 482, 594 (9); 81 AmJur2d 612, Witnesses, §§ 603, 611; 74 ALR 1052.

It is evident from the cross examination of the plaintiff that the evidence sought to be elicited dealt with whether he had records supporting his claim for damages or whether he had turned them over to the defendant.

Plaintiff did state that he "couldn't say whether [he] did or didn't" make an earlier contradictory statement. "In order to impeach a witness by contradictory statements, it is not necessary that he should absolutely deny the declarations made by him; but this may be done when the witness says he does not recollect such statements. . ." *Estill v. C. & S. Bank,* 153 Ga. 618 (4) (113 SE 552). " 'Proof that a witness made previous statements contradictory to the statements he made while testifying is admissible, though the witness testifies he does not remember whether or not he made such previous contradictory statements.' *Waycaster v. State,* 136 Ga. 95 (2), 101 (70 SE 883); *Sealy v. State,* 1 Ga. 213 (3) (44 Am. D. 641)." *Griffin v. Barrett,* 185 Ga. 443, 445 (195 SE 746).

Accordingly, as the purported impeaching evidence was admissible and was excluded, and its effect was for the jury, we cannot say as a matter of law that the error was harmless. Nor can we assume that this was the only point upon which the defendant may have desired to use the prior deposition as impeaching testimony of the plaintiff. The error was prejudicial to a substantial right of the defendant and requires reversal.

3. On December 3, 1976, prior to the trial date of this action, Dover Developers filed a "Motion for Intervention . . ." Dover contends they were never accorded a hearing or obtained a ruling on their motion. In view of the decision reached in the main action, this issue is moot.

*Judgment reversed. Shulman and Banke, JJ., concur.*

Submitted April 11, 1977 — Decided February 16, 1978 — Rehearings denied March 16, 1978 — Cert. applied for.

*Bell & Desiderio, Ruby Carpio Bell, Robert J. Abram,* for appellant.

*Cunningham & Clarke, Raymond A. Cunningham, Brian W. Wertheim,* for appellee.