## A09A0535. GREEN v. THE STATE.
### (679 SE2d 348)

BERNES, Judge.

Following a drug sting operation, Kevin Joseph Green and three co-defendants were arrested and indicted for several offenses arising out of their attempt to purchase 100 pounds of marijuana from an undercover officer. Green was tried separately, and the jury found him guilty of attempted trafficking in marijuana and possession of a firearm during the commission of a felony. The trial court denied his amended motion for new trial. On appeal, Green contends that there was insufficient evidence to convict him and that the trial court erred by denying his motion for mistrial and his motion for continuance. He also contends that his constitutional right of confrontation was violated when the state was permitted to continue asking leading questions to an unresponsive co-defendant and to have a police officer read into evidence certain prior statements made by the co-defendant. Finally, Green contends that he was entitled to a new trial based upon what he alleges was a state witness's impermissible comment on his pre- and post-arrest silence, the improper admission of his prior arrest record, and an erroneous charge to the jury

---

[1] 288 Ga. App. 863, 867 (2) (655 SE2d 707) (2007).
[2] *O'Neill v. State*, 285 Ga. 125 (674 SE2d 302) (2009).

regarding a defendant's right to subpoena witnesses. For the reasons discussed below, we affirm.

On appeal from a criminal conviction, we no longer presume the defendant is innocent, and we view the evidence in the light most favorable to the jury's verdict. *Wallace v. State*, 294 Ga. App. 159 (1) (669 SE2d 400) (2008). Viewed in this manner, the evidence showed that on May 12, 2005, officers employed by the Hall County Sheriff's Department and assigned to the Multi-Agency Narcotics Squad (the "MANS Unit") conducted a drug sting operation in which they arranged for the sale of 100 pounds of marijuana for the price of $65,000. That evening, the officer serving as the case agent for the sting operation had a telephone conversation with co-defendant Clarence Heard in which the agent posed as a drug seller. Heard agreed to purchase the marijuana worth $65,000, but told the case agent that he would need time to secure the money. They agreed to meet in the parking lot of a shopping center located in Hall County after the money was secured.

Later that night, Heard called the case agent and stated that he was ready to meet at the parking lot and purchase the marijuana. The case agent and other members of the MANS Unit set up surveillance of the parking lot in preparation for the sale. The marijuana was wrapped in 20-pound bundles and placed into a truck to be driven by a different undercover officer who would be posing as the drug seller for the purchase transaction.

While conducting surveillance of the parking lot, the case agent observed a Chevrolet Avalanche, followed closely by an Acura Legend, pull into the parking lot. The Avalanche contained co-defendants Russell Robinson and Heard. The Legend was driven by co-defendant Kali McDowell, and defendant Green rode in the front passenger seat.

The Avalanche parked near the center of the parking lot, and the Legend parked approximately ten feet away, directly facing the Avalanche. The undercover officer drove the truck containing the marijuana into the parking lot and parked directly in front of the Avalanche. The officer exited the truck and walked over to Heard, who had exited the Avalanche and was standing by the driver's side door of the Legend. The officer asked whether they were "ready to do the deal" and requested to see the purchase money. McDowell, the driver of the Legend, handed a black bag through the driver side window to Heard. Heard opened the bag, which contained a large amount of currency and a loaded semi-automatic pistol. After the officer had viewed the contents of the bag, Heard passed the bag back through the car window to McDowell. The officer and Heard then walked to the back of the officer's truck, and the officer showed Heard the bundles of marijuana. Once Heard inspected and approved

of the marijuana, the officer gave the "takedown signal," resulting in several officers with the MANS Unit moving onto the scene and detaining the four defendants.

As part of the takedown, the case agent approached the front passenger side of the Legend and detained Green, who remained in the vehicle. After removing Green from the seat, the case agent retrieved a loaded .40 caliber handgun that was in plain view on the passenger side floorboard where Green's legs had been located. The black bag containing the currency and semi-automatic pistol was seized from the center of the back seat of the Legend, which the case agent described as being "in arms' reach of both the driver [McDowell] and [the] front passenger [Green]." After seizing the black bag, the case agent determined that it contained $59,800 in currency. Additionally, a half-concealed handgun was recovered from the driver's side floorboard of the Legend.

As to the Avalanche, a nine millimeter pistol was recovered beside the front center console. The case agent also seized a box containing a set of electronic scales from the back of the Avalanche. There were "flakes" on the scales that the case agent, based on his training and experience, identified as marijuana.

The four defendants were jointly indicted for attempted trafficking in marijuana and possession of a firearm during the commission of a felony, but they were tried separately.[1] At Green's jury trial, the state relied upon the testimony of the case agent and undercover officer with the MANS Unit. The state also called co-defendant Robinson, who had elected to testify at his own trial the day before.[2] When asked whether he had testified in his own trial concerning "these acts that involved you and . . . Green," Robinson responded, "I don't know." Robinson then denied that he had been represented by counsel "yesterday before a jury on these same charges." In a subsequent series of questions concerning Green's role in the drug transaction, Robinson responded variously with "I don't know that either," "I don't want to answer the question," "No answer," and "I don't wish to testify. Hold me in contempt. I take the contempt."

---

[1] The four defendants also were charged with conspiracy to traffic marijuana, but the state entered a nolle prosequi with respect to that count against Green after the jury was unable to reach a unanimous verdict.

[2] The trial court ruled that Robinson was required to testify in Green's trial because he had waived his Fifth Amendment right against self-incrimination by testifying at his own trial. But see *Duvall v. State*, 259 Ga. 801, 802 (2) (387 SE2d 880) (1990); *Mallin v. Mallin*, 227 Ga. 833, 836 (3) (183 SE2d 377) (1971); *Bass v. Bass*, 222 Ga. 378, 385 (3) (149 SE2d 818) (1966); *Anderson v. Southern Guaranty Ins. Co. of Ga.*, 235 Ga. App. 306, 310 (508 SE2d 726) (1998). We note that "[t]he privilege against self-incrimination is that of the person under examination as a witness and is intended for his protection only; the defendant on trial has no standing to raise this issue." *Lively v. State*, 237 Ga. 35, 36 (226 SE2d 581) (1976).

Finally, Robinson denied that he was afraid of Green or that he had ever said that he was afraid of Green.

Following Robinson's direct examination by the state, defense counsel expressly declined to cross-examine him. Over objection, the state then recalled the case agent, who read to the jury certain portions of the certified transcript of Robinson's testimony from his own trial the previous day and a statement Robinson had made to the police. In his trial testimony and police statement, Robinson admitted that he had been present when McDowell, Heard, and Green met on the day of the drug transaction and agreed to pool their money and purchase a large amount of marijuana to be split between them. Robinson further stated that after their meeting, Green had removed the box containing the electronic scales from his own vehicle and had given the box to Heard, who then placed the box in the Avalanche. Finally, the case agent testified that Robinson repeatedly said that he was afraid of Green.

1. Green maintains that the evidence was insufficient to support his conviction for attempted trafficking in marijuana. He does not contest that the individuals who actively participated in the drug transaction were guilty of the charged offense. Rather, Green argues that the competent evidence was insufficient to demonstrate that he was a party to the offense rather than merely present at the scene of the drug purchase transaction.[3] We disagree.

On appeal from a criminal conviction, we neither weigh the evidence nor assess witness credibility, but only determine if the evidence was sufficient for any rational trier of fact to find the defendant guilty beyond a reasonable doubt of the charged offense. *Neugent v. State*, 294 Ga. App. 284 (1) (668 SE2d 888) (2008). See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Even if a person does not directly commit the crime, "[a] person who intentionally aids or abets in the commission of a crime or intentionally advises, encourages, hires, counsels or procures another to commit the crime may be convicted of the crime as a party to the crime." (Punctuation and footnote omitted.) *Buruca v. State*, 278 Ga. App. 650, 652 (1) (629 SE2d 438) (2006). See OCGA § 16-2-20 (b) (3), (4). "Whether a person is a party to a crime may be inferred from that person's presence, companionship, and conduct before, during and after the crime." *Marshall v. State*, 275 Ga. 740, 742 (4) (571 SE2d 761) (2002).

---

[3] Green also contends that any presumption that as a passenger he possessed the currency and firearms found in the Legend was rebutted as matter of law. But no presumption of possession arises from simply being a passenger in a vehicle, see *Reid v. State*, 212 Ga. App. 787, 789 (442 SE2d 852) (1994), and the state did not rely upon any such presumption to obtain Green's conviction. Hence, Green's contention is inapposite.

Here, the prior statements of co-defendant Robinson, introduced into evidence through the case agent, were evidence that Green was a party to the crime. While Green contends that Robinson's prior statements were inadmissible hearsay, "a prior inconsistent statement of a witness who takes the stand and is subject to cross-examination is admissible as substantive evidence." *Gibbons v. State*, 248 Ga. 858, 862 (286 SE2d 717) (1982). At Green's trial, Robinson clearly was reluctant to testify against Green and responded "I don't know" when asked multiple questions by the state relating to his prior statements. If a reluctant witness testifies that he does not remember whether or not he made a prior statement, the state is then entitled to introduce the prior statement as inconsistent with the in-court testimony of the witness. *Waycaster v. State*, 136 Ga. 95, 101 (70 SE 883) (1911); *Lexington Developers v. O'Neal Constr. Co.*, 145 Ga. App. 309, 313 (2) (243 SE2d 577) (1978). See also *Cummings v. State*, 280 Ga. 831, 832 (2) (632 SE2d 152) (2006); *LeBlanc v. State*, 283 Ga. App. 434, 437 (3) (641 SE2d 646) (2007); *Spann v. State*, 248 Ga. App. 419, 421-422 (1) (546 SE2d 368) (2001). Accordingly, Robinson's testimony at his own trial and his statement to the police were admissible as prior inconsistent statements and constituted substantive evidence of Green's participation in the attempted drug trafficking. See *Gibbons*, 248 Ga. at 862.

It is true that Robinson's prior inconsistent statements, standing alone, would be insufficient to sustain Green's conviction, since Robinson was an accomplice to the charged offense. See OCGA § 24-4-8 ("[I]n certain cases, including . . . felony cases where the only witness is an accomplice, the testimony of a single witness is not sufficient [to establish a fact]."). But accomplice testimony, in conjunction with slight evidence of corroboration connecting the defendant to the crime, is sufficient to sustain a conviction. *Burton v. State*, 293 Ga. App. 822, 825 (1) (668 SE2d 306) (2008). And the corroborating evidence can be circumstantial. *Ryans v. State*, 226 Ga. App. 595, 597 (1) (487 SE2d 130) (1997). In the present case, Robinson's statements were sufficiently corroborated by the testimony of the case agent that a loaded pistol was found at Green's feet and that the black bag containing the currency used in the drug transaction was found within arms' reach of Green. See *Spratling v. State*, 255 Ga. App. 500, 502 (565 SE2d 839) (2002) (accomplice's testimony was corroborated by evidence that weapon was located at the defendant's feet and the drugs were found within arms' reach of the defendant).

Finally, we reject Green's assertion that the state failed to exclude every reasonable hypothesis except that of his guilt. "[T]he reasonable hypothesis rule relied upon by [Green], codified in OCGA § 24-4-6, applies only when the evidence against the accused

was entirely circumstantial." (Citation, punctuation and emphasis omitted.) *Meeks v. State*, 281 Ga. App. 334, 337 (636 SE2d 77) (2006). Because Robinson's prior inconsistent statements were based on his eyewitness account of what occurred, Robinson's statements were direct evidence of Green's guilt, rendering the reasonable hypothesis rule inapplicable in this case.

For these combined reasons, we conclude that any rational trier of fact could have found Green guilty beyond a reasonable doubt of attempted trafficking in marijuana. *Jackson*, 443 U. S. 307. See OCGA §§ 16-2-20 (party to a crime); 16-4-1 (criminal attempt); 16-13-31 (c) (trafficking in marijuana); *Sherrer v. State*, 289 Ga. App. 156, 160 (2) (656 SE2d 258) (2008) (conviction of defendant as party to drug crime supported by prior inconsistent statement of co-defendant showing that the defendant was involved in the drug enterprise); *Spratling*, 255 Ga. App. at 502; *Patterson v. State*, 187 Ga. App. 406, 408 (1) (a) (370 SE2d 500) (1988) (defendant found guilty as party to the crime based in part on testimony that he was involved in the planning of the crime).

2. Green further maintains that the evidence was insufficient to support his conviction for possession of a firearm during the commission of a felony. Again, we disagree. The case agent testified that several firearms were seized from the Avalanche and Legend, including a loaded .40 caliber handgun that was in plain view on the front passenger side floorboard where Green's legs had been immediately before he was ordered out of the Legend. This testimony was sufficient to authorize any rational trier of fact to find Green guilty beyond a reasonable doubt of the charged offense. *Jackson*, 443 U. S. 307. See OCGA § 16-11-106 (b) (5) (possession of a firearm during the commission of a felony drug trafficking offense); *Anderson v. State*, 237 Ga. App. 595, 596 (2) (516 SE2d 315) (1999) ("Where a party has possessed a firearm during the commission of a felony, an accomplice who is concerned in the commission of the crime under OCGA § 16-2-20 is likewise guilty of both offenses.") (citation and punctuation omitted); *Carr v. State*, 196 Ga. App. 397, 397-398 (396 SE2d 76) (1990) (firearm possession conviction upheld where defendant was the passenger in the vehicle, a rifle was found on the passenger seat, and ten bullets were found on the passenger side floorboard).

3. During defense counsel's cross-examination of the case agent, the trial court sua sponte instructed counsel as follows:

> [S]ir, you can certainly ask him leading questions but you're beginning to make statements and I think that's improper. If you phrase your questions as questions, as leading as they will be, that's fine. But you are, in essence, testifying at this

point in time. I'm not going to permit you to do that. But you can certainly ask him cross-examination questions and leading questions.

Defense counsel then moved for mistrial on the ground that the trial court had reprimanded him in front of the jury in a prejudicial manner, and the trial court denied the motion. Green now contends that the trial court abused its discretion in denying his motion for a mistrial.[4] We are unpersuaded.

"It is error for any judge, during the progress of any case, or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved." OCGA § 9-10-7. But here,

the remarks were not directed to the evidence or to the credibility of witnesses, but to the conduct of the cross-examination by appellant's counsel, and were . . . sua sponte efforts by the trial court to control the trial. Pertinent remarks made by a trial court in discussing the admissibility of evidence or explaining its rulings do not constitute prohibited expressions of opinion.

*Morrison v. Morrison*, 282 Ga. 866, 867 (1) (655 SE2d 571) (2008) (no error where trial court's remarks were aimed at limiting counsel's cross-examination to relevant issues and to prevent the same question from being asked multiple times). Because the trial court's remarks were limited in scope to directing defense counsel, did not pertain to Green's guilt or innocence, and were not an expression of opinion as to what had or had not been proven in the case, the denial of Green's motion for mistrial was not error. See id.; *Adams v. State*, 282 Ga. App. 819, 826 (8) (640 SE2d 329) (2006) (no error where trial court interrupted defense counsel's closing argument and instructed him not to stray into irrelevant matters); *Mathis v. State*, 276 Ga. App. 205, 208 (622 SE2d 857) (2005) (no error where trial court, among other things, instructed defense counsel to stop "testifying"); *Lockaby v. State*, 265 Ga. App. 527, 528 (1) (594 SE2d 729) (2004) (no error where trial court admonished defense counsel for asking defense witnesses leading questions on direct examination).

4. Green next argues that the trial court abused its discretion in denying his motion for a continuance so that he could interview

---

[4] Although Green lists several additional grounds for why a mistrial should have been granted, he does not provide any argument or citation to supporting legal authority with respect to those grounds in accordance with Court of Appeals Rule 25 (a) (3). Hence, his assertion of error predicated on those additional grounds is deemed abandoned. Court of Appeals Rule 25 (c) (2); *Souder v. State*, 281 Ga. App. 339, 341 (1), n. 1 (636 SE2d 68) (2006).

Robinson, whose name had not appeared on the state's witness list.

> The witness list rule is designed to prevent a defendant
> from being surprised at trial by a witness that the defendant
> has not had an opportunity to interview. But, when a
> witness['s] name is contained in the indictment, a defen-
> dant cannot validly contend that he had been surprised or
> unable to interview the witness in question through lack of
> knowledge of such witness.

(Citations and punctuation omitted.) *Gassett v. State*, 289 Ga. App.
792, 794 (2) (658 SE2d 366) (2008). See *Redmond v. State*, 252 Ga.
142, 143 (2) (312 SE2d 315) (1984). Because Robinson was named in
the indictment as a co-defendant, Green had notice that Robinson
might be called as a state's witness, and we therefore discern no
abuse of the trial court's discretion in denying the motion for a
continuance. See id.

5. Green contends that he was denied his right to confrontation
under the Sixth Amendment of the United States Constitution
because the trial court allowed the state (a) to continue asking
leading questions to Robinson after it was clear that he was
unwilling to testify[5] and (b) to have the investigator read to the jury
portions of the transcript of Robinson's testimony at his prior trial
and his prior statement to the police. See, e.g., *Crawford v. Wash-
ington*, 541 U. S. 36 (124 SC 1354, 158 LE2d 177) (2004); *Porter v.
State*, 278 Ga. 694, 696 (3) (606 SE2d 240) (2004).

We find no violation of Green's right to confrontation. "The
main and essential purpose of confrontation is to provide the
opportunity for cross-examination." *Hawkins v. State*, 175 Ga. App.
606, 609 (2) (333 SE2d 870) (1985). Robinson was on the witness
stand and subject to cross-examination, but defense counsel ex-
pressly declined the opportunity to cross-examine him. Hence, no
effort was made by defense counsel to ascertain whether Robinson
would continue his refusal to answer certain questions or "would
offer testimony in explanation of his [prior trial testimony] or in
exculpation of [Green]." Id. at 610 (2). Under these circumstances,
Green "was not denied the right of confrontation, he simply did not
exercise it," and he has waived any objection he may have had on
confrontation clause grounds. Id. See *Sherrell v. State*, 274 Ga. 431,
432 (3) (554 SE2d 726) (2001); *Lively*, 237 Ga. at 36; *Lott v. State*, 281
Ga. App. 373, 374-375 (2) (636 SE2d 102) (2006).

---

[5] See, e.g., *Horne v. State*, 281 Ga. 799, 804-808 (5) (642 SE2d 659) (2007); *Lawrence v.
State*, 257 Ga. 423, 424-425 (3) (360 SE2d 716) (1987); *Lingerfelt v. State*, 235 Ga. 139 (218
SE2d 752) (1975).

In some instances, the failure to cross-examine may not waive a confrontation clause claim because it is clear from the record that an attempt at cross-examination would have been futile. See *Horne*, 281 Ga. at 806-807 (5) (defense counsel declined to attempt cross-examination after witness refused to utter any response to 117 questions posed by the state); *Lawrence*, 257 Ga. at 424 (3) (defendant declined to attempt cross-examination after witness invoked his Fifth Amendment privilege and refused to answer all of the questions posed by the state on direct examination). That is not the case here, where Robinson refused to answer some but not all of the questions posed to him by the state. See *Hawkins*, 175 Ga. App. at 609-610 (2).

6. Green also claims that the case agent impermissibly commented on his pre- and post-arrest silence. "The specific ground of objection must be made at the time the evidence is offered, and the failure to do so amounts to a waiver of that specific ground." (Citation and punctuation omitted.) *Copeland v. State*, 281 Ga. App. 656, 657 (637 SE2d 90) (2006). By failing to object to the case agent's allegedly impermissible comment, Green failed to preserve his claim of error for appellate review. See *Landers v. State*, 270 Ga. 189, 190-191 (2) (508 SE2d 637) (1998); *Binns v. State*, 296 Ga. App. 537, 539 (2) (675 SE2d 265) (2009).

7. According to Green, the state improperly placed his character in issue when it introduced evidence of his prior arrest record through the case agent. We do not agree.

During cross-examination, defense counsel questioned the case agent about an information sheet filled out when Green was processed after his arrest. Defense counsel elicited testimony from the case agent that on the information sheet, Green indicated that he had never been arrested or convicted of a crime. Over objection, the state then was allowed on redirect examination of the case agent to introduce evidence that Green had two prior arrests.

Under these circumstances, the state's introduction of evidence of Green's two prior arrests was not improper. Since the only conceivable purpose of defense counsel's questions to the case agent was to elicit testimony concerning Green's character, defense counsel opened the door to the state's rebuttal character evidence on the same specific subject. See *Donaldson v. State*, 279 Ga. App. 407, 409 (1) (631 SE2d 443) (2006); *Hill v. State*, 243 Ga. App. 124, 127-128 (3) (532 SE2d 491) (2000). Cf. *Parker v. State*, 169 Ga. App. 557 (1) (313 SE2d 751) (1984) (state was entitled to question defendant about his prior arrests in order to impeach defendant's prior testimony that "[he had] never been in a situation . . . dealing with the law"). The

trial court therefore committed no error by allowing the evidence.[6]

8. Lastly, Green asserts that the trial court impermissibly shifted the burden of proof to him as the defendant when the court instructed the jury that the defendant has a right to subpoena witnesses. We disagree.

The trial court charged the jury: "Although in a criminal case there is no burden or requirement that the defendant produce any witnesses, any accused in any criminal case has the right to the process of the Court to subpoena any witness to testify that they wish to subpoena." The jury charge was an accurate statement of the law and provides no ground for reversal. See OCGA § 24-10-21; *Klug v. State*, 77 Ga. 734, 737 (4) (1886); *Miller v. State*, 155 Ga. App. 54, 55 (3) (270 SE2d 466) (1980). This is particularly true where, as here, the trial court also charged the jury that the defendant is presumed innocent until the presumption is overcome by the state with sufficient evidence; that the burden of proof rests on the state to prove every element of the charged crimes and every material allegation of the indictment beyond a reasonable doubt; that the defendant is under no duty to present any evidence or take the stand to testify; and that no adverse inference should be drawn by the defendant's decision not to testify.

*Judgment affirmed. Smith, P. J., and Phipps, J., concur.*

DECIDED MAY 18, 2009.

*Tony L. Axam*, for appellant.
*Lee Darragh, District Attorney, John G. Wilbanks, Jr., Assistant District Attorney*, for appellee.

---

[6] Green maintains that even if he opened the door to evidence of his prior arrests, the state did not lay a proper foundation for the evidence by establishing that the case agent had personal knowledge of the arrests or by obtaining a certified copy of his arrest record. At trial, Green objected to the introduction of testimony concerning his prior arrests on the grounds that he had not opened the door to such testimony and that the state had not laid a proper foundation. The trial court ruled that Green had opened the door and that the state could introduce the testimony about his prior arrests if the state "lays a foundation, about whether or not [the case agent] has any knowledge." The state subsequently elicited testimony from the case agent about the prior arrests without laying a foundation in the manner prescribed by the trial court, but Green did not renew his objection of lack of proper foundation. Green thus has waived his right to complain on appeal. See *Warren v. State*, 289 Ga. App. 481, 485 (4) (a) (657 SE2d 533) (2008) ("Failure to renew objection to the conditional admission of evidence affords no basis of appeal.") (citation and punctuation omitted).