**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and DILLARD, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**October 31, 2012**

# In the Court of Appeals of Georgia

A12A1180. PALENCIA-BARRON v. THE STATE.

PHIPPS, Presiding Judge.

Alexander Palencia-Barron appeals his conviction for trafficking in methamphetamine. He contends that the trial court erred in denying his motion for a directed verdict of acquittal, admitting improper evidence, and refusing to give a particular charge to the jury. For the following reasons, we affirm.

1. We first address Palencia-Barron's contention that the trial court erred in denying his motion for a directed verdict of acquittal because there was no evidence that he possessed the drugs found in the truck in which he was a passenger.

The standard for reviewing a denial of a motion for a directed verdict of acquittal is the same test to be used when the sufficiency of the evidence

is challenged, i.e., under the rule of *Jackson v. Virginia*,[1] whether the evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that the defendant was guilty of the charged offense.[2]

We view the evidence in the light most favorable to the verdict,[3] and the defendant no longer enjoys the presumption of innocence.[4]

> [M]oreover, an appellate court does not weigh the evidence or determine the credibility of witnesses. . . . As long as there is some competent evidence, even though contradicted, on each element necessary to prove the [s]tate's case, the jury's verdict will be upheld.[5]

Viewed in the appropriate light, the evidence showed that on November 9, 2010, a sheriff's deputy working with a county multi-agency narcotics squad used a confidential informant to arrange the purchase of methamphetamine. The confidential informant was instructed to set up the purchase in the parking lot of a particular

---

[1] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[2] *Dorsey v. State*, 279 Ga. 534, 542 (3) (615 SE2d 512) (2005) (citations omitted); see *Hash v. State*, 248 Ga. App. 456, 457 (1) (546 SE2d 833)(2001).

[3] *Hammond v. State*, 303 Ga. App. 176, 181 (3) (692 SE2d 760) (2010).

[4] *Jarrett v. State*, 299 Ga. App. 525, 527 (2) (683 SE2d 116) (2009) (citation omitted).

[5] Id. at 527-528 (2) (footnote omitted).

location. The deputy instructed the confidential informant to remove his hat when he saw the drugs. Agents were on the lookout for a white Dodge pickup truck with two men of a particular race inside.

After waiting a "couple hours," a white Dodge pickup truck with occupants matching that description entered the parking lot of the designated location. The truck pulled up alongside the confidential informant's vehicle. The confidential informant exited his vehicle, walked to the passenger side of the truck, and spoke with the two occupants. Less than 30 seconds later, the confidential informant removed his hat. Law enforcement officers surrounded the truck, took both occupants out of the truck, and handcuffed them. No one else was inside the truck. Palencia-Barron was the passenger.

The officers searched the truck and found two cups on the passenger side floorboard; inside each cup was a bag of suspected methamphetamine; and loose suspected methamphetamine was found in one cup. An officer testified that the substances had a strong chemical odor. A forensic chemist with the Georgia Bureau

of Investigation testified that the substances tested positive for methamphetamine and had a net weight of 335.71 grams.[6]

The truck driver was charged, and prior to Palencia-Barron's trial, pled guilty to trafficking in methamphetamine for his involvement in the incident. At trial, he testified that Palencia-Barron was with him when a man known to him only as "El Burro" approached him, gave him two cups, and told him that he would pay him $100 to deliver one of the cups to a particular location. The driver testified that he asked Palencia-Barron to accompany him on the delivery and Palencia-Barron agreed. The driver testified that he placed the cups on the floorboard underneath Palencia-Barron's seat, and that, at his direction, Palencia-Barron grabbed a bag of suspected drugs and showed it to an unknown individual who approached the truck in the parking lot.

At trial, the driver testified that Palencia-Barron "didn't know anything about this." The prosecutor then asked the driver whether he had given an out-of-court statement to a law enforcement officer that Palencia-Barron knew they were

_____

[6] OCGA § 16-13-31 (e) pertinently provides: "Any person who knowingly sells, delivers . . . or has possession of 28 grams or more of methamphetamine . . . in violation of this article commits the felony offense of trafficking in methamphetamine. . . ."

4

delivering drugs. The driver replied: "I don't remember." The prosecutor asked the driver whether he had given a statement days earlier, during his guilty plea hearing, that both he and Palencia-Barron knew they were delivering drugs. The driver replied: "Yeah." The driver further acknowledged that during his guilty plea hearing, he had testified that El Burro was going to give him $100 and that he was going to give some of that money to Palencia-Barron. An officer testified that the driver had told him in an interview on the date of the arrest that both he and Palencia-Barron knew what they were doing, and both knew that the substance being delivered was drugs.[7]

Palencia-Barron argues that the evidence presented to show that he possessed the methamphetamine was not credible. He points out that the officers who discovered the drugs failed to "memorializ[e] the discovery of these important items," and that the driver's testimony that he held the drugs was elicited "on leading direct-examination." He also asserts that because the driver pled guilty before the trial in this case and "attempted to take full responsibility" for the drugs, he (Palencia-

---

[7] *Green v. State*, 298 Ga. App. 17, 21 (1) (679 SE2d 348) (2009) (if a reluctant witness testifies that he does not remember whether he made a prior statement, the state is then entitled to introduce the prior statement as inconsistent with the in-court testimony of the witness).

5

Barron) should have been exonerated. But it is not within our province to weigh the evidence or determine the credibility of witnesses.[8]

In his appellate brief, Palencia-Barron appears to also argue that his mere spatial proximity to contraband was insufficient to support the conviction. But the state's case was not based on Palencia-Barron's mere spatial proximity to the drugs. There was testimony from the driver that Palencia-Barron knew that they were going to deliver drugs, held one of the bags of methamphetamine, and showed the bag of methamphetamine to the confidential informant.

The driver's testimony was corroborated,[9] in part, by an officer's testimony that the smell of methamphetamine in the truck was strong; and that immediately after taking the occupants out of the truck, drugs were located on the passenger-side floorboard of the vehicle, which was where Palencia-Barron's feet had been

---

[8] *Jarrett*, supra.

[9] *Goldsby v. State*, 273 Ga. App. 523, 530 (7) (615 SE2d 592) (2005) (a defendant may not be convicted solely on the testimony of an accomplice; the accomplice's testimony must be supported by some independent corroborating evidence; *Millsap v. State*, 275 Ga. App. 732, 734 (1) (621 SE2d 837) (2005) (the sufficiency of the corroborating evidence is a matter for the jury, and if the verdict is based upon the slightest evidence of corroboration connecting an accused to the crime, even if it is circumstantial, it is legally sufficient; the corroboration need not be sufficient to warrant a guilty verdict or prove every material element of the crime; it need only tend to connect and identify the defendant with the crime charged).

situated.[10] "As a general rule, when drugs are found in the immediate presence of the defendant, the jury is authorized to find they are in constructive possession of the accused."[11] Indeed, the presence of drugs near a vehicle where a defendant was a passenger is sufficient to corroborate an accomplice's testimony that the defendant possessed the drugs.[12] Accordingly, the trial court did not err in denying Palencia-Barron's motion for a directed verdict based on his claim that the state failed to prove he possessed the drugs.

2. Palencia-Barron contends that the trial court erred by admitting testimony, from a law enforcement officer and from the driver, that he knowingly possessed drugs because the officer who testified as to the driver's out-of-court statements had interviewed the driver through the use of an interpreter, who could not recall the interview, had no recording of the interview, and had no notes of the interview; and the driver was not asked at trial about the basis of his knowledge.

---

[10] See *Green*, supra (co-defendant's statements were sufficiently corroborated by the testimony of the case agent as to the location of contraband).

[11] *Dunn v. State*, 277 Ga. App. 209 (1) (626 SE2d 174) (2006) (punctuation and footnote omitted).

[12] *Carr v. State*, 282 Ga. App. 199, 200 (1) (638 SE2d 348) (2006); *Dunn*, supra at 210 (1).

(a) "In order to raise on appeal contentions concerning admissibility of evidence the specific ground of objection must be made at the time the evidence is offered, and a failure to do so will be considered as a waiver. All evidence is admitted as a matter of course unless a valid ground of objection is interposed."[13] And an objection on a specific ground at trial waives any objection to that evidence on other grounds on appeal.[14] At trial, the only objection offered by the defense as to the officer's testimony about the driver's statement was that it was hearsay. Accordingly, as the objections which Palencia-Barron now asserts were not made before the trial court, they are waived.[15]

In any event,

> [u]nder the so-called 'language conduit' rule, absent a motive to mislead, distort or some other indication of inaccuracy, when persons speaking different languages rely upon a translator as a conduit for their communication, the statements of the translator should be regarded as

---

[13] *Doughty v. State*, 175 Ga. App. 317, 321 (5) (333 SE2d 402) (1985) (citation and punctuation omitted).

[14] *Ross v. State*, 231 Ga. App. 793, 801 (14) (499 SE2d 642) (1998).

[15] Id.

8

the statements of the persons themselves without creating an additional layer of hearsay.[16]

Palencia-Barron has shown no indication of inaccuracy in the translation or motive of the interpreter to mislead or distort the translation. Accordingly, the court was authorized to treat the statements of the translator as though they were made directly to the officer by the driver.[17]

(b) Palencia-Barron complains that the driver was not asked at trial about the basis of his knowledge that Palencia-Barron knowingly possessed methamphetamine.

"A witness may testify to facts about which he has personal knowledge."[18] "Where a witness testifies to a fact, the presumption is, in the absence of anything to the contrary, that he is testifying from his own knowledge."[19]

---

[16] *Lopez v. State*, 281 Ga. App. 623, 625 (1) (636 SE2d 770) (2006) (citations omitted).

[17] Id.

[18] *John Crane, Inc. v. Wommack*, 227 Ga. App. 538, 542 (3) (489 SE2d 527) (1997) (citation and punctuation omitted).

[19] *Jester v. State*, 193 Ga. 202, 209 (1) (17 SE2d 736) (1941) (citation and punctuation omitted); *Shaw v. Jones, Newton & Co.*, 133 Ga. 446 (66 SE 240) (1909) (where nothing appeared to indicate that the witness was not testifying from his own knowledge, an objection on the ground that the witness should testify from his own knowledge, was not good).

The driver testified that Palencia-Barron was with him when a man approached him (the driver) and asked him to deliver a cup; that Palencia-Barron agreed to ride with the driver to deliver the cup; that the driver planned to give Palencia-Barron some money to ride with him to make the delivery; that Palencia-Barron rode with him to make the delivery; that the cup was located on Palencia-Barron's side of the vehicle; and that, at the delivery location, Palencia-Barron showed, to an unknown individual who had approached the vehicle, a bag that was inside the cup.

An officer testified that he had arranged, with a confidential informant, a drug buy at the location of the arrest; that the vehicle described by the confidential informant appeared at the designated location; that he received a prearranged signal from the confidential informant that drugs were present; that the two occupants of the vehicle were arrested; that Palencia-Barron was the passenger; and that methamphetamine was located on the floorboard of the passenger side of the vehicle.

Thus, the driver showed he had personal knowledge, and Palencia-Barron points to no evidence to rebut the presumption that the driver was testifying from his own personal knowledge.[20]

---

[20] See *Jester*, supra; *Shaw*, supra; *Wiggins v. State*, 74 Ga. App. 231, 231-232 (39 SE2d 450) (1946).

10

3. Palencia-Barron contends that his sole defense was "mere presence as a passenger," and that the trial court erred by failing to charge the jury sua sponte that a rebuttable presumption arises that all items found inside a vehicle belong to the owner or driver of the vehicle. Again, we find no error.

"The trial court's duty in delivering charges to the jury is to tailor those charges not only to the indictment but also adjust them to the evidence at trial. Any instructions should stand upon a base founded in evidence or lack thereof."[21]

> [A] presumption arises from proof of ownership and control of an automobile or other property that the owner or driver is in possession of contraband found therein; however, this presumption does not apply when there is evidence that . . . others had access to the vehicle. There is no reverse presumption with regard to a passenger's presence in an automobile in which contraband is found.[22]

Put another way, "no presumption of possession arises from simply being a passenger in a vehicle."[23] The evidence showed that Palencia-Barron was a *passenger* – not the

---

[21] *Davis v. State*, 181 Ga. App. 28, 29 (2) (351 SE2d 458) (1986) (citations omitted).

[22] *Bell v. State*, 198 Ga. App. 874, 874-875 (1) (403 SE2d 864) (1991) (citation omitted).

[23] *Green*, supra at 20 (1), n. 3 (citation omitted).

11

owner or driver – in a vehicle in which methamphetamine was found. Accordingly, no presumption arose that Palencia-Barron possessed the methamphetamine.[24]

Palencia-Barron's contention that the trial court should have sua sponte given the charge is based on his mistaken premise that the state did not present proper evidence to corroborate the driver's testimony that he (Palencia-Barron) knowingly possessed the methamphetamine.[25] The trial court instructed the jury on sole and joint possession, actual and constructive possession, mere presence at the scene of the commission of a crime and mere association with persons involved in the commission of a crime, thus fairly instructing the jury regarding Palencia-Barron's defense.[26] The trial court correctly ruled that the charge was not authorized by the evidence in the case.[27] Therefore, the trial court's failure to give the jury charge was not erroneous.

*Judgment affirmed. Ellington, C. J., and Dillard, J., concur.*

---

[24] See id.; *Lipsey v. State*, 287 Ga. App. 835, 838 (2) (652 SE2d 870) (2007); *Williams v. State*, 210 Ga. App. 437, 438 (2) (436 SE2d 550) (1993).

[25] See Division 1, supra.

[26] See *Lipsey*, supra (no charge on presumption of possession necessary where defendant was not the driver of the vehicle nor proven to be the owner, and a witness testified that he saw the defendant holding contraband); *Williams*, supra at 439 (2).

[27] *Green*, supra; *Lipsey*, supra; *Williams*, supra; *Bell*, supra; *Davis*, supra.

12