**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**February 22, 2013**

# In the Court of Appeals of Georgia

A12A1828. RAINEY v. THE STATE.

MILLER, Presiding Judge.

Following a jury trial, Kenneth Shamar Rainey was convicted of criminal attempt to traffic in cocaine (OCGA §§ 16-13-31 (a) (1), 16-13-33), criminal attempt to traffic in marijuana (OCGA §§ 16-13-31 (c), 16-13-33), and possession of a firearm during the commission of a crime (OCGA § 16-11-106 (b) (5)). The trial court denied Rainey's motion for new trial. On appeal, Rainey contends that (i) the evidence was insufficient to sustain his convictions; (ii) the trial court erred in admitting hearsay evidence; and, (iii) his trial counsel provided ineffective assistance by failing to object to inadmissible hearsay evidence. We discern no error and affirm.

"On appeal from a criminal conviction, we no longer presume the defendant is innocent, and we view the evidence in the light most favorable to the jury's

verdict." (Citation omitted.) *Green v. State*, 298 Ga. App. 17, 18 (679 SE2d 348) (2009).

So viewed, the trial evidence shows that on June 13, 2007, an undercover officer assigned to the Fayette County Drug Suppression Task Force received information from an informant that an individual named "Braids" was interested in purchasing twenty-five pounds of marijuana. Using the information supplied by the informant, the officer, posing as a drug dealer, contacted "Braids" and made arrangements for the drug transaction. During the course of their discussions, "Braids" also negotiated to purchase one kilogram of cocaine from the officer. "Braids" and the officer agreed to meet later that afternoon at a gas station located in Fayette County.

The officer arranged to have the meeting recorded by audio and videotape. After arriving at the designated location, "Braids" confirmed that he was present at the gas pumps and then pulled his vehicle beside the officer's vehicle. The officer observed that the vehicle had three occupants, who were later identified as Rainey and his co-conspirators, James Riley Ponder and Randy Wayne Sims. Ponder drove the vehicle; Sims occupied the front passenger seat; and, Rainey occupied the back

passenger seat. The officer identified Ponder as being "Braids" since he matched the description given by the informant.

Rainey's co-conspirator, Sims, approached the officer's vehicle and examined the drugs for the transaction. The officer cut open the packaging and displayed the twenty-five pound brick of marijuana and the compressed kilogram of cocaine. Sims tested a sample of the cocaine and gave his approval, stating "everything's good."

The officer then asked to see the money for the transaction. The officer followed Sims to the rear passenger side of the vehicle, where Rainey was waiting. Upon receiving Sims's instruction, Rainey opened a t-shirt and showed the officer a bundle of money. Rainey also pulled another stack of money from the waistband of his pants and showed it to the officer. Rainey and his co-conspirators advised the officer that they had more money, but insisted that the officer follow them to a dealership in Union City to complete the drug transaction because they did not feel comfortable at the present location.

The officer refused to leave the Fayette County jurisdiction to make the drug transaction. At that time, the officer instead gave his fellow undercover officers a verbal signal to move in and effect the arrests of Rainey and his co-conspirators.

Following the arrests, the officers searched the vehicle that Rainey and his co-conspirators had occupied. During a search of the back passenger seat where Rainey had been seated, the officers found a loaded .40 caliber semi-automatic pistol. An officer testified that the pistol was loosely placed under the seat cushion in a manner that caused the cushion to curve up, and that the pistol was easily accessible and noticeable. The officers also recovered $8,602 from inside the vehicle.

Rainey and his co-conspirators were jointly charged with the offenses of attempted trafficking in cocaine and marijuana. Rainey was separately charged with the offense of possession of a firearm during the commission of a crime. Prior to trial, Rainey's co-conspirators pled guilty to the drug offenses. Rainey proceeded to trial. During the trial, the videotape depicting the attempted drug transaction was admitted into evidence and was shown to the jury. The jury found Rainey guilty of the drug and weapon offenses.

1. Rainey contends that evidence was insufficient to sustain his convictions. We disagree.

(a) *Attempted Trafficking in Cocaine and Marijuana.*

An individual commits the offense of attempt when with intent to commit a specific crime, he performs any act which constitutes a

4

substantial step toward the commission of that crime. The act must be more than mere preparation, but it can not accurately be said that no preparations can amount to an attempt. The question, then, is one of degree, depending upon the circumstances of each case.

(Punctuation and footnotes omitted.) *Davenport v. State*, 308 Ga. App. 140, 143 (1) (a) (706 SE2d 757) (2011). Here, Rainey was charged with attempted trafficking in cocaine, which required proof that he attempted to knowingly possess 28 grams or more of cocaine or any mixture with a purity of 10 percent or more of cocaine. See OCGA §§ 16-13-31 (a) (1) (defining trafficking in cocaine), 16-13-33 (defining criminal attempt). Rainey also was charged with attempted trafficking in marijuana, which required proof that he attempted to knowingly possess a quantity of marijuana exceeding 10 pounds. See OCGA §§ 16-13-31 (c) (defining trafficking in marijuana), 16-13-33 (defining criminal attempt).

Under Georgia law, a defendant is culpable for the consequences of his co-defendant's acts under the theory of conspiracy if he together with one or more persons conspires to commit any crime and any one or more of such persons does any overt act to effect the object of the conspiracy.

A conspiracy is an agreement between two or more persons to do an unlawful act, and the existence of a conspiracy may be established by

5

proof of acts and conduct, as well as by proof of an express agreement. When persons associate themselves in an unlawful enterprise, any act done by any party to the conspiracy to further the unlawful enterprise is considered to be the act of all the conspirators.

(Citations and punctuation omitted.) *Johnson v. State*, 299 Ga. App. 706, 707-708 (1) (a) (683 SE2d 659) (2009). "Presence, companionship and conduct before and after the commission of the alleged offenses may be considered by the jury and are circumstances which may give rise to an inference of the existence of a conspiracy." (Citations and punctuation omitted.) *Burnette v. State*, 241 Ga. App. 682, 683-684 (1) (527 SE2d 276) (1999).

Likewise, a defendant may be convicted as a party to a crime if he intentionally aids and abets the commission of a crime. See *Johnson*, supra, 299 Ga. App. at 708 (1) (a). "Mere presence at the scene is not sufficient to convict one of being a party to a crime, but criminal intent may be inferred from conduct before, during, and after the commission of a crime." (Citations and punctuation omitted.) Id.

Based upon the evidence of Rainey's companionship and conduct during the attempted drug transaction, the jury was authorized to find that Rainey had engaged in a conspiracy with Ponder and Sims to commit the drug offenses. The trial evidence established that Rainey and his co-conspirators had arranged and attempted to

6

purchase one kilogram, which exceeded 28 grams, of cocaine from the undercover officer. **Rainey and his co-conspirators also had attempted to purchase twenty-five pounds of marijuana from the undercover officer during the same transaction. The trial evidence further showed that Rainey took substantial steps and actively participated as a party to the attempted drug offenses by traveling with his co-conspirators to meet the undercover officer at the designated location and at the arranged time for the purpose of conducting the transaction, and by showing the undercover officer bundles of money to be used toward the drug purchases.**

**During the attempted drug transaction, Rainey's co-conspirator examined and approved the packages of cocaine and marijuana. Subsequent testing confirmed that the drug substance in one of the packages was cocaine with a purity of 76.4 percent and weighing approximately 991.48 grams. Testing also confirmed that the drug substance in the other package was marijuana weighing approximately 29 pounds.**

**Based upon the combined evidence, including Rainey's active participation in the conspiracy to purchase the large quantities of cocaine and marijuana, the jury was authorized to find Rainey guilty beyond a reasonable doubt of the**

attempted trafficking in cocaine and marijuana offenses. See *Green*, supra, 298 Ga. App. at 20-22 (1) (affirming a defendant's conviction for attempted trafficking in marijuana based upon evidence that he provided money to purchase the drugs and accompanied his co-defendants to the arranged location for the drug deal, which established his participation as a party to the crime); *Toney v. State*, 304 Ga. App. 25, 29 (3) (695 SE2d 355) (2010) (affirming a defendant's attempted drug trafficking conviction based upon evidence that he had met the undercover agent and paid funds to purchase a large quantity of drugs).

(b) *Possession of a Firearm During the Commission of a Crime.* Rainey further contends that the evidence was insufficient to support his conviction for possession of a firearm during the commission of a crime. Again, we disagree.

"Any person who shall have on or within arm's reach of his or her person a firearm . . . during the commission of, or the attempt to commit . . . [a]ny crime involving the trafficking of cocaine, marijuana, or illegal drugs as provided in Code Section 16-13-31, and which crime is a felony, commits a felony[.] " OCGA § 16-11-106 (b) (5). "[W]hen a defendant is charged under [OCGA § 16-11-106 (b) (5)], the evidence is sufficient to sustain a conviction when it is shown at trial

8

that a firearm was within arm's reach of the defendant at any point during the commission of the crime, thus giving the defendant immediate access to the weapon." (Punctuation, footnotes, and emphasis omitted.) *Davenport*, supra, 308 Ga. App. at 148 (1) (c). The jury may infer the defendant's possession of the firearm from both circumstantial and direct evidence. See id.

The evidence showed that the officers recovered a loaded pistol from underneath the backseat where Rainey had been sitting during the attempted drug transaction. An officer testified that the pistol was loosely placed under the backseat cushion, and that the pistol was easily accessible and noticeable. Moreover, the jury had an opportunity to view the videotape depicting Rainey's position in the backseat. The jury was authorized to determine from the officer's testimony and their observations that the pistol was within Rainey's arm's reach during the commission of the drug crimes. See *Davenport*, supra, 308 Ga. App. at 148 (1) (c) *Saulsberry v. State*, 198 Ga. App. 707, 708-709 (402 SE2d 550) (1991).

2. Rainey also argues that the trial court erred in admitting hearsay statements of his co-conspirators. He claims that the admission of the hearsay

statements violated his constitutional rights under the Confrontation Clause. Rainey's claims are without merit.

Since Rainey's trial occurred prior to January 1, 2013, the former rules of evidence must be applied in analyzing the evidentiary claims presented in this case. Under the former provisions of OCGA § 24-3-5,[1] "[a]fter the fact of conspiracy is proved, the declarations by any one of the conspirators during the pendency of the criminal project shall be admissible against all."

> To render an out-of-court statement admissible under [former] OCGA § 24-3-5, the prosecution need only show that it was made by a co-conspirator during an ongoing conspiracy with the defendant and that it bears sufficient indicia of reliability. The trial judge may admit [statements] by co-conspirators before the conspiracy has been proved, provided its existence is ultimately shown at trial. The question of the existence of a conspiracy is ultimately for the jury to determine. The existence of a common design or purpose between two or more persons to commit an unlawful act may be shown by direct or circumstantial evidence.

---

[1] The former provisions of OCGA § 24-3-5 were in effect until January 1, 2013, when Georgia's new rules of evidence became effective. See Ga. L. 2011, p. 1, §1/ HB 24. We nevertheless note that the new rules likewise provide for the admissibility of a statement made by a co-conspirator during the course and in furtherance of the conspiracy. See OCGA § 24-8-801 (D) (2) (E) (enacted by Ga. L. 2011, p. 99, § 2/HB 24).

(Citations and punctuation omitted.) *Womack v. State*, 273 Ga. App. 300, 303 (2) (a) (614 SE2d 909) (2005). As stated in Division 1 (a) above, the evidence in this case was sufficient to authorize a finding that Rainey had participated in a conspiracy to commit the drug offenses. The challenged statements were made by Rainey's co-conspirator while coordinating the drug transaction and in furtherance of the conspiracy. The evidence also established that the statements bore a sufficient indicia of reliability since Rainey and his co-conspirators arrived at the designated location at the agreed upon time to conduct the drug transaction; Rainey's co-conspirator examined the drugs, and; Rainey showed the officer the bundles of money to be used toward the drug purchases. As such, the co-conspirator's statements were admissible under the co-conspirator exception under former OCGA § 24-3-5. See *Harris v. State*, 255 Ga. 500, 501-502 (2) (340 SE2d 4) (1986).

Rainey nevertheless argues that the trial court erred in admitting the co-conspirator's statements without giving a limiting instruction that the jury could not consider the statements unless it found that a conspiracy was proven beyond

11

a reasonable doubt.[2] See *Toney*, supra, 304 Ga. App. at 26-27, n. 8 (1) (comparing a case where the jury was given a cautionary charge to consider a co-conspirator's out-of-court statements only if they found that a conspiracy existed at the time the statements were made); *Harris*, supra, 255 Ga. at 501 (2) (noting that the jury was given, before each witness testified, a cautionary instruction to consider the co-conspirator's statement only if they found that a conspiracy had existed at the time that the statements were heard). Notably, however, Rainey did not request a limiting instruction on the jury's consideration of the co-conspirator's statements. Generally, a trial court's failure to give a sua sponte limiting instruction as to evidentiary considerations does not constitute reversible error. See, e.g., *Matthews v. State*, 221 Ga. App. 129, 131 (3) (470 SE2d 518) (1996); *Duren v. State*, 177 Ga. App. 421, 423 (2) (339 SE2d 394) (1986). "[B]ecause [Rainey] failed to request that a limiting instruction be given, he cannot complain about its absence for the first time on appeal." (Punctuation omitted.) *Matthews*, supra, 221 Ga. App. at 131 (3).

---

[2] Although the trial court gave jury charges defining a conspiracy and advising the jury of their duty to determine whether a conspiracy existed, the trial court failed to give instructions regarding the evidentiary consideration of the co-conspirator's statements.

12

Moreover, notwithstanding the admissibility of the statements under the co-conspirator exception, the statements were alternatively admissible under the res gestae exception set forth in the former provisions of OCGA § 24-3-3.[3] See *Toney*, supra, 304 Ga. App. at 27-28 (1). Based upon the applicable former rule, the surrounding circumstances constituting part of the res gestae could always be shown to the jury along with the principle fact. See id. Accordingly, acts and circumstances forming a part or continuation of the main transaction were generally admissible as res gestae. Id. Since the statements in this case were made during the planning phase and arrangements leading up to the attempted drug transaction, they were admissible under the former res gestae exception. See *Toney*, supra, 304 Ga. App. at 27-28 (1); *Jones v. State*, 294 Ga. App. 854, 855-856 (3) (670 SE2d 506) (2008); *Brewer v. State*, 224 Ga. App. 656, 659 (7) (481 SE2d 608) (1997).

Furthermore, contrary to Rainey's assertion, the admission of the co-conspirator's statements did not violate the Sixth Amendment's Confrontation

---

[3] Prior to January 1, 2013, former OCGA § 24-3-3 provided that "[d]eclarations accompanying an act, or so nearly connected therewith in time as to be free from all suspicion of device or afterthought, shall be admissible in evidence as part of the res gestae."

13

Clause under *Crawford v. Washington*, 541 U. S. 36, 68 (V) (C) (124 SCt 1354, 158 LE2d 177) (2004), because the statements were not testimonial in nature. See *Toney*, supra, 304 Ga. App. at 28 (2). "Statements are testimonial in nature when the primary purpose of the statements is to establish or prove past events potentially relevant to later criminal prosecution. . . . [O]ur courts have routinely held that statements made by co-conspirators during the conspiracy are not testimonial in nature." (Punctuation and footnotes omitted.) Id. Here, the co-conspirator's statements were made to the undercover officer while making arrangements and attempting to consummate the attempted drug transaction, which were prior to the arrests. "Such statements are not testimonial for purposes of *Crawford.*" (Footnote omitted.) Id. Since the co-conspirator's statements were made during the conspiracy and were not testimonial for purposes of the *Crawford* analysis, Rainey's challenge based upon the Confrontation Clause is without merit. See id.

3. Lastly, Rainey contends that his trial counsel provided ineffective assistance by failing to continuously object to the hearsay statements of his co-conspirator.

14

To establish a claim of ineffective assistance of counsel, [Rainey] must show both that his trial counsel's performance was deficient and that counsel's deficiency so prejudiced his defense that a reasonable probability exists that the result of the trial would have been different but for that deficiency. There is a strong presumption that trial counsel's assistance was adequate and that counsel's decisions were made within the bounds of reasonable professional judgment. Moreover, a trial court's finding that a defendant has been afforded effective assistance of counsel must be upheld unless that finding is clearly erroneous.

(Citation, punctuation, and footnote omitted.) *Owens v. State*, 271 Ga. App. 365, 369-370 (5) (609 SE2d 670) (2005).

The record shows that when the officer began to testify about his conversations with Rainey's co-conspirator while arranging the drug transaction, trial counsel interposed an objection. After conducting a bench conference to address the issue, the trial court overruled trial counsel's objection. Although trial counsel requested a continuing objection to the line of questioning and testimony regarding the co-conspirator's statements, the trial court denied the request and ruled that contemporaneous objections were required.

15

Notwithstanding Rainey's contention that trial counsel failed to continuously object when his co-conspirator's statements were subsequently referenced, no error has been shown. As an initial matter, Rainey has not cited to any subsequent instances in which trial counsel failed to object to the evidence. To the extent that Rainey has failed to include a specific reference to the transcript supporting this claim of error, we cannot consider his claim. "[Rainey] bears the burden of proving error affirmatively by the record. It is not the function of this court to cull the record on behalf of a party in search of instances of error." (Citations and punctuation omitted.) *Wade v. State*, 305 Ga. App. 382, 383 (1) (700 SE2d 827) (2010). Otherwise, as previously stated in Division 2 above, the co-conspirator's statements were admissible under the former provisions of OCGA §§ 24-3-3 and 24-3-5. Trial counsel was not ineffective for failing to make a meritless or futile objection. See *Jones*, supra, 294 Ga. App. at 856 (3); *Owens*, supra, 271 Ga. App. at 370 (5).

*Judgment affirmed. Ray and Branch, JJ., concur.*